OPINION OF THE COURT
Leonard N. Cohen, J.
This matrimonial action involves the first trial in this city under part B of section 236 of the Domestic Relations Law popularly referred to as the Marital Equitable Distribution Law, effective on July 19, 1980. Governor Hugh Carey, in approving this legislation, stated it “represents the most sweeping reform of the divorce laws in this State since the Divorce Reform Act of 1966.” The Governor further said: “The bill recognizes that the marriage relationship is also an economic partnership. Upon its dissolution, property accumulated during the marriage should be distributed in a manner which reflects the individual needs and circumstances of the parties regardless of the name in which such property is held. In addition, it permits awards of maintenance to be made to meet the reasonable needs of a party without regard to gender.” (McKinney’s Session Laws of NY, 1986, p 1863.)
The procedure in this matrimonial action was as follows: The plaintiff (hereinafter referred to as the husband) commenced an action on May 12, 1977, for separation on the sole ground of cruelty. The defendant (hereinafter referred to as the wife) denied the allegations and sought alimony but did not assert a counterclaim for either divorce or *967 separation. On July 14, 1980,. the husband served a notice of intention to amend his complaint substituting a prayer for a judgment of divorce in lieu of separation.
The trial commenced in December, 1980. On December 5, the court granted the husband’s motion to amend his complaint to seek a divorce. Subsequently, on December 8, based on a written stipulation by the parties and the evidence at that time, the court granted leave to the parties to amend their pleadings to request a dual divorce on the respective grounds of cruelty. Accordingly, the court granted dual judgment of divorce on December 8, 1980. In addition, the stipulation permitted the parties to seek equitable distribution under part B of section 236 of the Domestic Relations Law and the husband accepted his wife’s amended answer to this effect as a timely pleading as of December 8,1980. Both parties waived any claim that equitable distribution should be denied on the ground that the action was deemed to have been commenced untimely, and also waived any bar of a court award for maintenance by reason of the wife’s misconduct constituting grounds for the husband’s judgment of divorce.
Left unresolved by the stipulation was the date of the commencement of the matrimonial action. Under section 236 (part B, subd 1, par c) of the Domestic Relations Law, marital property is defined as property acquired during the marriage and prior to the commencement of the “matrimonial action”. The wife contends that as a matter of law, the December date of the stipulation and pleading amendments marks the “commencement of the matrimonial action” for the purpose of determining marital property and the equitable distribution of the appreciated value of her husband’s separate property, the value of which increased substantially between 1977 and 1980.
The husband disputes the wife’s contention and argues that the stipulation of December 8, 1980 was consented to solely for applying the new law retroactively to permit distribution in accordance with its terms, and to remove the old law alimony bar. He claims that as a matter of law, the commencement of his separation action on May 12, 1977, should be the governing date for all purposes of equitable distribution.
*968 Section 236 (part B, subd 5, par a) of the Domestic Relations Law provides that the court shall determine the parties’ equitable entitlement to marital property in “certain matrimonial actions.” A separation action is excluded therein from those matrimonial actions to which equitable distribution applies. This court, therefore, finds that the Legislature intended to defer the equitable distribution of marital assets belonging to separated spouses, as such an act of finality should be suspended until an action is commenced to dissolve the marriage. Consequently, both spouses are on notice that property acquired after the commencement of a separation action may still be subject to equitable distribution at a later date, should a dissolution of the marriage subsequently occur.
Following this logic in this action, which commenced in May, 1977 as a separation action, it was not until July 14, 1980 when a notice of intention to amend the separation action to a divorce action was served that the wife was put on notice that this proceeding could result in the dissolution of the marriage. It was that point, according to the statutory framework, which acted as the terminus for the acquisition of property potentially subject to equitable distribution, for that was the point in time when a “matrimonial action” seeking to dissolve the marriage was commenced. It would be unjust to fix the commencement of the matrimonial action, as the wife in effect urges, on the actual date that the motion to amend was granted, December 5, 1980, since matrimonial practice requires that the disposition of such motions await trial. Nor is the husband’s argument that but for the stipulation, the action would be controlled by the former law compelling. That is surely true, but under the stipulation the parties agreed to the application of the equitable distribution law and the statute is clear in this regard that the commencement of a separation action is not a termination point for the acquisition of marital property. Therefore, the court finds that the commencement of the marital action for the purpose of equitable distribution is July 14, 1980.
A background of some of the uncontroverted marital circumstances is relevant. Both parties are highly educated, intelligent and articulate. The husband was British *969 born and became a naturalized United States citizen in 1942. Prior to his marriage in 1938, he and his brother formed American Industrial Diamonds, Inc., for the sale of industrial diamonds and the manufacture of diamond tools in the United States and Canada, with its working capital provided by their father, who was a prosperous businessman in the worldwide diamond mining and distribution field. This company later was absorbed by merger into Diamond Distributors, Inc. (hereinafter referred to as DDI) engaged in the importing, sales, mining and marketing of diamonds in the United States and abroad. The husband’s background reflects a prosperous mercantile and well-established tightly knit family, with international, social, professional and commercial relationships, which were and still are influential in the worldwide diamond business. Dominating the family was the husband’s deceased father, in control of various American and international diamond enterprises. Upon his death, the husband’s uncle, his mother’s brother, assumed control in the line of succession under the family tradition. Since 1977, the husband has been the president and chief executive officer of this continuing and flourishing diamond business. His brother, Bernard, and the parties’ two eldest sons are also in this business, following the DDI tradition.
In 1980, the husband earned an annual salary of $150,000 and concededly an additional $30,000 from investments. Plaintiff estimates his 1981 total annual earning as $208,136.
The wife, born in New York City of a Spanish father and French mother, was graduated from Hunter College. She is a natural linguist, fluent in English, Spanish, French and thoroughly familiar with German, Portugese and Russian. Prior to marriage, she was a successful chanteuse in the United States and Canada with a potential movie career, earning in 1939, an average of $500 weekly. At the Maisonette Russe Club in New York’s St. Regis Hotel, where she was appearing as a singer, the parties met and fell in love. Shortly thereafter, they married in November, 1939, in this city.
The circumstances of the wife’s background also involve a tightly knit family, but lacking a commercially success *970 ful family anchor, as in the case of her husband. The wife, as the evidence showed, assumed the responsibility prior to and during marriage for caring for her family, particularly her handicapped sister, the education of one brother and the support of another brother who is currently incapable of earning a livelihood.
At the time of marriage, the husband knew of his wife’s promising career and earnings, her family’s needs and her feelings of responsibility to them. The husband at that time may have been earning less than she, but nevertheless he had the resources and potential security of a successful family business tradition to rely upon, which she lacked. Whether or not it was upon the husband’s insistence, the fact is, that the wife gave up her career upon her marriage to be wife and mother of four sons, now aged 37, 34, 32 and 27 to whom both parties have been and still are devoted.
Those facts remaining undisputed, the court will now consider the issues raised during the trial in the following sequence:
I — the type of property, marital or separate, subject to equitable distribution or a distributive award and the values thereof,
II — the equitable distribution of appropriate property or the equitable distributive award, if appropriate, including the wife’s entitlement to certain forms of special relief,
III — the award of maintenance.
I. property: marital and separate
The court first focuses consideration on the issue of the type of property, marital or separate, which is subject to equitable distribution and the values thereof. The relevant provisions of the law in this regard are as follows: Section 236 (part B, subd 5, par a) of the Domestic Relations Law provides that “the court, in an action wherein all or part of the relief granted is divorce *** shall determine the respective rights of the parties in their separate or marital property, and shall provide for the disposition thereof in the final judgment.” Marital property is defined under section 236 (part B, subd 1, par c) of the Domestic *971 Relations Law as “all property acquired by either or both spouses during the marriage and before *** the commencement of a matrimonial action, regardless of the form in which title is held”, and further “[m]arital property shall not include separate property”. Separate property is defined under section 236 (part B, subd 1, par d, cl [1]) of the Domestic Relations Law as “property acquired before marriage or property acquired by bequest, devise or descent, or gift from a party other than the spouse;” and relevantly herein under section 236 (part B, subd 1, par d, cl [3]) “the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse”.
The following property is conceded as marital property. It was all owned and acquired by the husband during marriage and before even the commencement of the husband’s separation action on May 12, 1977 and is therefore subject to equitable distribution. The court identifies such property, as “Group A Property”, the value of which was also undisputed at the time of trial:
Savings and cash $ 11,165
United States Trust Co. asset 891
Receivables 30,916
Securities account 176,705
New York City Co-op apartment equity 103,079
The total gross value of this undisputed marital property therefore $322,756.
The character of the following property is in dispute but the values are uncontroverted and all, except two, are owned by the husband. The court identifies these properties as “Group B Property”, as follows:
M. Giurescu’s Arizona undeveloped realty $ 70,000
Frank Ortega’s 270 West End Avenue co-operative apartment 375,000
Husband’s Avenue Foch, Paris, France, co-operative apartment 714,285
Husband’s Dutchess County realty-Green Meadow farm 357,600
Husband’s Paris, France, studio co-operative apartment 42,857
*972 Furniture, art objects, jewelry, etc., possessed by both spouses 93,257
Husband’s DDI notes 435,000
Husband’s DDI profit-sharing plan 120,940
Husband’s life insurance cash surrender value 24,500
Husband’s DDI stock 2,231,985 (1978)
3,273,242 (1980)
Each of these Group B properties will be separately analyzed as each involves varying factual elements and legal consequences.
The court first considers two properties which concededly neither spouse had legal title to during marriage and were acquired prior to July 14,1980, namely, the 270 West End Avenue 11-room co-operative apartment (hereinafter referred to as the 270 co-op) purchased by the husband in 1971 with legal title in the name of the wife’s brother, Frank Ortega, and the Arizona undeveloped realty, purchased by the husband but owned by Mona Giurescu, with whom plaintiff has been living since he left the Paris marital home, either in late 1972 or early 1973.
The husband claims that when title to the 270 co-op was taken4n the name of his wife’s brother, the parties verbally agreed and intended that title would later be assigned either to the wife or to both parties jointly, but that his wife arbitrarily prevented her brother’s performance of this agreement. The husband, therefore, contends this co-op, currently appraised at $375,000, was intended by the parties as an interspousal gift or a jointly acquired property and, therefore, constitutes marital property subject to equitable distribution. The wife contends the 270. co-op was intended solely as a gift to her brother to provide a secure permanent residence for him and her other family members and, therefore, is excludable from distribution as marital property.
The court finds that in 1971, the 270 West End Avenue building was converted to a co-operative, and the husband financed the $22,500 purchase. However, due to pending litigation between Frank Ortega, the wife’s brother, as *973 lessee, and other tenants and the co-operative sponsoring corporation, title was taken in Frank Ortega’s name on advice of the husband’s counsel to avoid any possibility of a legal challenge by the corporation to the validity of the coop purchase. The husband in addition to financing the purchase has paid all the annual maintenance charges to date. Significantly, the husband has never taken any legal steps to compel the claimed gift or title assignment or for a declaration of rights of the parties, other than raising this issue for the first time during trial in opposition to the wife’s equitable distribution counterclaim. Nor has any written memorandum been made regarding this claimed intention to have title assigned to the wife or to both parties. Since Frank Ortega is the sole owner, the court finds this 270 co-op was not acquired by either or both spouses, but was, in fact, a generous gift by the husband to his wife’s brother for her family’s use as well as her own. Therefore, it is excludable as marital property. Accordingly, the husband is not required in the future to maintain the carrying charges on this co-operative property and, as pointed out later, the court finds this expense is not includable in any maintenance award.
As for the Arizona undeveloped realty valued at $70,000, the court finds that this property, although acquired during marriage and prior to July 14, 1980, was purchased in the sole name of Mona Giurescu. This property, too, was neither acquired in the name of either or both of the spouses, nor did the proof show it was intended by the husband to be his property notwithstanding his furnishing the cost thereof. Accordingly, this realty is also excludable from marital property as a gift to a third party.
Turning to the real property owned by the husband, the court makes the following findings of fact and law. In 1953, the husband purchased a working farm, which included an old farmhouse, several barns and out buildings and approximately 330 acres in Dutchess County, New York. The purchase price of this property was $47,000 of which $22,000 was paid in cash and $25,000 was reflected in a purchase-money mortgage. During 1953, capital improvements were made to the property amounting to $27,000. *974 Prior to the sale of the farmhouse in 1978, the family often summered and vacationed at this farm.
The undisputed testimony at trial established that $49,000 paid, including capital improvements, but exclusive of the mortgage, was advanced to the husband from moneys he had on deposit with DDI resulting from gifts accumulated from his parents. Therefore, the funding source of two thirds of this property was the husband’s separate property, and to that extent it represents property acquired in exchange for separate property and under section 236 (part B, subd 1, par d, cl [3]) of the Domestic Relations Law remains his separate property. No claim was made at trial that the wife contributed to the appreciation of this separate property and the evidence indicated that the Appreciation of the value of this property was due to a general rise in the value of real estate. However, the remaining one third represents the portion of this property which is marital in nature and available for distribution under section 236 (part B, subd 5, par c) of the Domestic Relations Law.
The proof showed that the husband’s Paris studio co-op, valued at $42,850, was purchased by him during marriage and prior to 1980. Accordingly, this asset constitutes marital property as defined in section 236 (part B, subd 1, par c) of the Domestic Relations Law and, therefore, this court finds such property to be subject to distribution under section 236 (part B, subd 5, par c).
The sole asset belonging to the wife is $39,000 currently held in a DDI special account at 8xh% interest. This constitutes separate property as accumulated gifts from her in-laws and is therefore excludable from distribution.
Each party claims marital distribution for the value of furniture, art objects, jewelry and other personal property possessed by each other, namely, personalty estimated as valued at $53,257 and in the possession of the husband and personalty estimated as valued at $40,000 and in the possession of the wife. Such property constitutes distributable marital property as all the items were acquired during marriage and prior to 1980.
However, no evidence of the nature or reasonable value of each of these items individually was offered nor did the *975 parties pursue this phase of their respective claims at trial, although they had the fullest opportunity to do so. The court, therefore, finds not only an absence of proof as to each such item of property and its fair and reasonable value but also finds the parties waived their respective distributable claims in this regard. It is noted, however, from the evidence that the estimated value of personal property currently in the possession of each party is about equal.
Therefore, the court, under all the circumstances, finds that this personal property was already distributed by the parties themselves without the necessity of a court order. The court determines that each party shall retain the right of ownership over whatever personal property they each possess now without any further distribution.
The remaining realty owned by the husband, namely, the Avenue Foch co-op, having a gross appraised value of $714,285, the evidence showed, was purchased in 1971. This $227,276 purchase was financed by a $200,000, mortgage the husband had placed on the Green Meadow property, channeled through DDI in New York to DDI in France and from a personal DDI loan to the husband. At most, 10% of this purchase price is attributable to a gift from the husband’s parents of DDI receivables owed to them during their lifetimes. Accordingly, 90% of the Avenue Foch co-op is treated as marital property under section 236 (part B, subd 1, par c) of the Domestic Relations Law and subject to distribution under section 236 (part B, subd 5, par c). Like Green Meadow Farm, the court finds that the wife made no specific claim to having made efforts or contributions to the Avenue Foch apartment which would entitle her to some portion of the appreciated value of the 10% representing separate property. Again, the increased value of this property is attributable to market factors.
The wife, however, seeks permanent exclusive use and occupancy of the Avenue Foch apartment as her marital home and/or a transfer of legal title to her and in either event, she urges that the responsibility for the maintenance and upkeep, to the extent of at least $38,400 annually, be solely her husband’s obligation.
*976 Under section 236 (part B, subd 5, par f) of the Domestic Relations Law “[i]n addition to the disposition of property ***, the court may make such order regarding the use and occupancy of the marital home and its household effects as provided in section two hundred thirty-four of this chapter, without regard to the form of ownership of such property.” Section 234 of the Domestic Relations Law relevantly provides that “in an action for divorce, * * * the court may *** (2) make such direction, between the parties, concerning the possession of property, as in the court’s discretion justice requires having regard to the circumstances of the case and of the respective parties.”
Pursuant to these sections, the court finds it would be just, fair and appropriate to impose a three-year time limitation on the wife’s exclusive personal use and occupancy of the Avenue Foch co-op. The court finds the Avenue Foch co-op was the primary marital home of the parties for 25 years and the wife has strong emotional attachments to it, particularly because of her western European heritage, friendship, and language fluency. She, therefore, is entitled to continue to occupy it exclusively, but in the court’s opinion for a limited period of three years. Although this home was once the focal point of the most active period of their marital lives as a center of extensive DDI business, and social entertainment and family life, the home is no longer used for these purposes. One of the 10 factors considered by the court in determining the disposition of marital property is section 236 (part B, subd 5, par d, cl [3]) of the Domestic Relations Law, that is, “the need of a custodial parent to occupy or own the marital residence and to use or own its household effects”. But in this case, there is no longer a need by the wife to use this apartment as a “custodial parent” for her four sons are emancipated and self-supporting.
Based on the testimony and all the evidence the court finds this co-op is and will continue to be a bone of contention between the parties because of the heavy cost of upkeep and the husband’s deprivation of his portion of the net sales proceeds to which he would be entitled as a marital distribution. Under all the circumstances, a limitation of time of three years that the wife may exclusively *977 occupy this co-op for her personal use is justified and appropriate. It serves as a reasonable transitional period of adjustment to her newly divorced status without custodial responsibilities for children and in the absence of a husband with heavy business and social needs.
Therefore, the court directs, that the wife shall have the exclusive right to personally use and occupy the Avenue Foch co-op for a period of no lpfoger than three years from the date of entry of a judgment herein. At the end of three years or sooner, thereof, depending upon the wife’s option, the husband shall sell this co-op immediately or as soon as practicable with 90% of the net sales proceeds to be divided as part of the distributive award to the wife in an amount as hereinafter determined.
The court declines to direct any limitations on the wife as to the manner of distributing her share of the sales proceeds. She is free to exercise her own judgment as to how she decides to use such funds.
Further, the wife claims that her husband’s DDI promissory notes valued at $435,000 constitute marital property subject to distribution while her husband disputes this claim, contending such assets are separate property excluded from distribution. The court’s findings regarding this dispute are as follows.
The DDI notes receivable due the husband in the sum of $435,000 represent inter vivos and testamentary gifts from his parents and, therefore, are separate property, not subject to distribution. The evidence at trial established a pattern of gifts from Jac and Rosette Jobs to their children, children-in-law and grandchildren that extended over a half century. In fact, the $39,000 currently on deposit with DDI for the benefit of the wife was accumulated by her as gifts in the same way from her in-laws. The uncontradicted evidence sufficiently established in this court’s opinion that these notes were gifts to the husband and, therefore, his separate property.
The husband’s principal asset is his ownership of DDI stock. On September 30, 1980, he owned 2,567.3 shares of DDI stock equal to 27.815% of the issued shares having a value of $3,273,242. The stock value appreciated from *978 December, 1977 to September, 1980 by $2,261,056. His DDI stock constitutes two thirds of his total assets.
The wife has conceded that the husband’s DDI stock is separate property resulting from gifts from his parents and accordingly she does not seek distribution as such of her husband’s DDI shares of stock. However, she contends in the alternative (1) that if his DDI stock interest, its book value and good will are treated as separate property, then she is entitled to the portion of its appreciated value attributable to her “contributions [and] efforts” under section 236 (part B, subd 1, par d, cl [3]) of the Domestic Relations Law, or (2) the retained earnings held by DDI and proportionately attributable to the husband’s stock interest, she argues, are merely deferred earnings or an interest-free loan by the husband and other shareholders to DDI which were actually assets the husband acquired during marriage.
The court finds that the retained earnings attributable to the husband’s DDI stock interest constitute separate property. The fair preponderance of the evidence showed that the husband’s DDI stockholdings evolved from his father’s premarital and marital gifts to him through a chain of intricate transactions involving stock exchanges, corporate mergers, note and loan transfers and stock reorganizations over the years. The court rejects the argument of the wife that the retained earnings upon which the DDI stock value is based constitute distributable marital property. The unique nature and structure of this closely held family corporation requires extensive bank credit, the business being totally dependent upon it. The retained earnings are not in the nature of readily available independent personal assets of the husband but rather are incremental increases in the value of DDI stock, as DDI historically has never paid a dividend or distributed after tax profits. Moreover, in the event the husband withdrew from DDI under the DDI stockholder agreement his stock is required to be sold back to other shareholders to maintain family control. Significantly, the Internal Revenue Service has never objected, in audits, to DDI accumulating these after-tax profits as corporate retained earnings. Although upon dissolution of DDI or at his death, the hus *979 band or his estate would be entitled to the book value commensurate with his stock interest, the crux of such interest is based on his stock shares, derived solely as gifts from his parents. Therefore, his DDI stock and his proportionate share of retained earnings are separate property and, as such, exempt from distribution.
With respect to the distribution of the appreciated value of the husband’s separate property, i.e., his stock and the DDI good will, the wife would be entitled under section 236 (part B, subd 1, par d, cl [3]) of the Domestic Relations Law to share in such appreciation but only to the extent that it was due to her “contributions or efforts.” In this regard, the court finds that the Legislature in providing for the distribution of the appreciated value of “separate property”, expressly omitted as a consideration “contributions and services * * * as a spouse, parent, wage earner and homemaker, *** to the career or career potential of the other party”, which is expressly provided as 1 of 10 factors in determining a maintenance award under section 236 (part B, subd 6, par a, cl [8]) of the Domestic Relations Law and as similarly provided as 1 of 10 factors in determining equitable distribution of “marital property” under section 236 (part B, subd 5, par d, cl [6]) of the Domestic Relations Law. It would appear therefore that the Legislature intended a construction of the meaning of a spouse’s “contribution or efforts” toward the appreciated value of “separate property” to exclude considerations of services as a spouse, parent, wage earner, homemaker or other spousal career advancement factors.
The basis for the wife’s claim to having made such “contributions or efforts” to the undisputed increased value of her husband’s DDI stock interest during marriage are primarily indirect and speculative such as having socially aided him in the United States and abroad during marriage, and as a homemaker to enable him to devote full-time efforts to his business interests and as serving as his frequent companion on various worldwide business trips. The wife has never participated directly in any manner in DDI business activities.
The evidence showed that she did perform some of the above services but even if the contributions and efforts *980 under section 236 (part B, subd 1, par d, cl [3]) were more broadly construed to include homemaker and career advancement services, evidence was lacking as to any reasonable estimate or any extent to which her efforts affected the appreciation of DDI stock or profits. The court finds that the DDI stock profits and resulting increased value during marriage were attributable to market factors and to the husband, his father, uncle and others in the worldwide management of DDI as well as the husband’s own personal premarital and marital social and business associations and relationships and those of his family. In fact, it appears the greatest increase in profits which occurred in recent years resulted from the “diamond fever” of the marketplace, something beyond even the control of DDI. Some of the indirect alleged services testified to by the wife were postseparation and subsequent to her knowledge of the husband’s living with another woman and hardly can be characterized as efforts which contributed to increased DDI profits. Some of her activities interfered with her husband’s business and social relationships, rather than being supportive during this postseparation period. Although the wife undoubtedly maintained warm friendships with some of her husband’s social and business friends and spouses, the extent to which such relationships resulted in increased DDI profits is purely speculative. The value of his stock increased or declined due to management and market factors. The wife could not correlate how and in what manner her indirect spousal efforts or services led to the appreciation in the value of DDI stock during marriage. Accordingly, the court finds the wife is not entitled to a distribution of the appreciated value of her husband’s separate property of DDI stock.
The wife seeks to have her husband’s vested interest in the DDI profit-sharing plan included as marital property for immediate equitable distribution purposes. This fund was valued at $120,940 as of September 30, 1980 and the evidence indicated that her husband’s estimated interest in this fund will be $250,000 within five years.
Under this DDI plan, funds are allocated annually from profits to all members of the board of directors in accordance with each of their shareholder stock interest in DDI. *981 The funds are independently managed and invested by outside advisors. The purpose of the plan is twofold: it serves as a corporate death benefit fund for DDI directors and their named beneficiaries or as a pension fund for a withdrawn director. The husband’s interest in the plan may be withdrawn if he resigns, retires or leaves DDI. With these exceptions he cannot invade the fund during his lifetime, and the appreciated value remains intact for his named beneficiary, in the absence of a revision of the plan by the board of directors which would affect all board members as well as the plan itself.
Although the evidence pointed to the unlikelihood of his resignation, retirement or departure from DDI, in view of his dominant role as president and sole voting trustee, the court is mindful that during the lifetime of the parties these contingencies could occur. Moreover, there is a possibility, although remote, that the board would revise the plan permitting board members to withdraw funds to the detriment of a beneficiary.
There is no question that the husband’s interest in this fund was accumulated and acquired during marriage and, therefore, this court finds it to be marital property. The fact that the husband has not chosen to exercise his right to receive such funds, does not take them outside the scope of marital property. The right to share in these undistributed profits accrued during the marriage, and as undistributed or deferred earnings, the wife is entitled to share in this fund.
The amount of this fund allocated to the husband at the time of trial was $120,940. This is the only evidence before the court as to the value of this asset. No figures were offered as to its value as of July 14, 1980, the date herein construed to be the date of the commencement of the matrimonial action. However, the use of this figure will not prejudice either party as the time lapse between July, 1980 and its calculation was relatively short. Therefore, the court finds the wife is appropriately entitled to an equitable distribution of this marital property, the gross value of which is $120,940.
However, the court finds that under section 236 (part B, subd 5, par e) of the Domestic Relations Law it would be *982 impractical and burdensome to compel the husband to distribute a portion of this fund as a cash distribution at this time. To compel an award now would unjustly and adversely affect the entire DDI plan and the other directors’ interest, possibly destroying the unique nature and purpose for which it was established. Furthermore, it seems unnecessary, in view of the extent of the marital property available for distribution, to force all or part of its liquidation now, especially because of the growth potential of this type of joint investment plan. Rather, this court determines that a deferred distribution of these funds as hereinafter provided is appropriate.
The court in its discretion directs the husband to continue to maintain the profit-sharing plan intact while he remains with DDI and to name the wife as his sole irrevocable beneficiary under the plan, without liens, revocation or encumbrance during his lifetime. Should he predecease her or resign, retire or withdraw from DDI and the wife has not remarried, the wife is entitled as his beneficiary to the full amount accumulated in the fund at that time.
In its discretion under section 236 (part B, subd 5, par d, cl [10]) of the Domestic Relations Law, the court finds it just and proper to award the entire accumulated fund to the wife as delineated above as a distributive award should the husband predecease her. Such an award in part compensates the wife for her loss of inheritance and pension rights. (Domestic Relations Law, § 236, part B, subd 5, par d, cl [4].)
Upon dissolution of this marriage, the measure of the wife’s loss of inheritance rights is set out in EPTL 5-1.1 (subd [a], par [1], cl [A]) wherein she has the right to elect one third of her husband’s net estate if he fails to provide for her under his will and is survived by one or more issue or under EPTL 5-1.1 (subd [c], par [1], cl [B]), one third of his net estate if he^dies intestate. He could, if married, provide for a trust for her of one third of his estate.
Evidence was insufficient to calculate one third of such net amount for estate purposes. Moreover, the court would be engaging in speculation as to how a future Surrogate’s Court would evaluate DDI stock in a testamentary trust *983 under the DDI nonliquid, nonincoming producing circumstances here. However, the Legislature has expressly provided for the consideration of a loss of inheritance rights indicating that a wife of a long-term marriage should be compensated should she survive the husband, even though the measure of that compensation is difficult to calculate.
The award of the entire fund to the wife should the husband predecease her and she has not remarried is also justified by the probable financial circumstances of each party. The wife will be dependent upon the assets she receives hereunder. Moreover, should the husband predecease her, this award will also in part compensate her for her loss of maintenance. Further, the full award is justified if the husband retires or withdraws from DDI because there is a contingency that health reasons might force the husband to retire and should he subsequently die such a sequence of events might unfairly deprive the wife of this fund which it has been determined is necessary to protect her for the above reasons. However, should the wife predecease the husband or remarry, such an ¿ward is not justified and in that event, the wife or her estate is only entitled to an immediate cash distributive award of one half the marital property, to wit, $60,470.
The wife seeks immediate distribution of the cash surrender value of the husband’s $65,000 life insurance policy. The cash surrender value as of the date of trial was $24,500. The court determines this amount to be marital property subject to equitable distribution. This was the only value established by the evidence at trial as no proof was adduced of its value as of July 14, 1980. Again, however, no prejudice results by use of this date.
However, the court finds a cash distribution now to be unwise and inappropriate in view of the size of the other distributable assets awarded herein and the necessity for the protection of the wife’s future financial security in the event the husband predeceases her. Accordingly, payment of her distributive award of the cash surrender value shall be deferred as determined herein. The statute confers broad discretion on the court under section 236 (part B, subd 8, par a) of the Domestic Relations Law to compel appropriate life insurance on the life of the husband for the *984 benefit of the wife unless she remarries or predeceases him.
According to the 1972 United States life expectancy tables at the age of 68, his life expectancy is 11.4 years or the age of 79.4 years and hers at 66 is 16.3 years or the age of 82.3 years. Her life expectancy therefore is about 2.9 years greater than his. Although this is a nonbinding estimate, it may be appropriate and just to provide the wife with greater protection than these actuarial tables suggest.
Having weighed the size of the distributive award herein and the maintenance to be awarded, the expected longevity of the parties and considering the effect of the loss of inheritance and of maintenance, should he predecease her, upon the wife’s future standard of living and under the broad discretion of section 236 (part B, subd 8, par a) of the Domestic Relations Law the court hereby directs the husband to increase the amount of the $65,000 life insurance coverage by $135,000 to total $200,000 designating the wife as the sole and irrevocable beneficiary of such a policy, which he shall maintain, unless or until she remarries or predeceases him in which event his obligation shall be terminated. In the event, however, that the wife should remarry or predecease the husband, she or her estate shall be immediately entitled to one half of the current cash surrender value of the existing policy, to wit, $12,250, which represents the wife’s distributive share of this marital property. This determination is based on the same reasoning proffered in support of the distribution of the profit-sharing plan.
Should the husband be unable to extend his coverage as directed for medical or other noninsurable reasons, he is hereby directed to provide in his last will and testament a bequest to the wife of $135,000. Such obligation shall terminate under section 236 (part B, subd 8, par a) of the Domestic Relations Law should she predecease him or remarry. The authority to direct such a bequest, this court believes, is drawn from the discretionary power to direct the purchase of life insurance in such a case as this, where the husband due to age or infirmity may not be able to obtain such protection.
*985 The husband is directed also under section 236 (part B, subd 8, par a) to continue to provide and/or to purchase sufficient health and hospital care and related service benefits for his wife, which are mutually satisfactory to the parties as long as he remains obligated for maintenance. If there is disagreement between the parties as to this issue in a settled judgment, this court will determine such insurance coverage on application of either party.
The court therefore finds the Group A and B marital property subject to equitable distribution (other than the $120,940 profit-sharing plan and the $24,000 life insurance cash surrender value, which is treated separately herein) has an estimated gross value of $1,127,669 comprised of conceded Group A marital assets estimated to be $322,756; and Group B marital assets of realty estimated to be valued as follows: Green Meadow farm, $119,200; Paris studio co-op, $42,857 and Avenue Foch co-op, $642,856. The court.finds these values to be fair and reasonable and fully substantiated by the fair preponderance of the credible evidence.
II. DISTRIBUTION
In determining how the marital property shall be distributed, the court considered the following statutory guidelines set out in section 236 (part B, subd 5, par d, els [1]-[10]) of the Domestic Relations Law:
“(1) the income and property of each party at the time of marriage, and at the time of the commencement of the action;
“(2) the duration of the marriage and the age and health of both parties;
“(3) the need of a custodial parent to occupy or own the marital residence and to use or own its household effects;
“(4) the loss of inheritance and pension rights upon dissolution of the marriage as of the date of dissolution;
“(5) any award of maintenance under subdivision six of this part;
“(6) any equitable claim to, interest in, or direct or indirect contribution made to the acquisition of such marital property by the party not having title, including joint *986 efforts or expenditures and contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party;
“(7) the liquid or non-liquid character of all marital property;
“(8) the probable future financial circumstances of each party;
“(9) the impossibility or difficulty of evaluating any component asset or any interest in a business, corporation or profession, and the economic desirability of retaining such asset or interest intact and free from any claim or interference by the other party;
“(10) any other factor which the court shall expressly find to be just and proper.”
The circumstances here warrant an equal distribution of the marital property as delineated. Weighing heavily in favor of an equal division are the following circumstances: a marriage of 41 years, of which 33 years were spent together; the birth and care of four sons by the wife, although now they are emancipated and self-supporting; a successful young career abandoned by the wife, largely on the husband’s insistence, to undertake responsibility for a marital home; the wife’s role as a constant source of social spousal companionship; the wife’s almost total absence of financial resources at age 66, and lack of skills or training to undertake a self-supporting career; the wife’s total dependence during marriage upon her husband’s material wealth and income which appears likely to continue to prosper; his net worth of over $5,000,000, although two thirds of this amount constitutes his nonliquid DDI stock interest; the husband’s annual salary of $150,000, and his expectant maternal inheritance of at least $250,000, her sole asset being $39,000 in a DDI account, earning 8xh% interest; the nonliquidity of most of the marital property and the wife’s need for immediate cash; the loss of the wife’s inheritance rights upon the dissolution of this marriage, the loss of maintenance in the event the husband predeceases her; and the extent of her maintenance award in an inflationary economy, which is, historically, likely to continue. This court has also considered the husband’s *987 claimed liabilities of $452,993, of which a portion of this amount, however, reflects his note and mortgage on his New York City co-op in the sum of $196,572.
Having set forth hereinabove the property subject to distribution and having determined that each party is entitled to a sum equal to 50% of the marital property, the court must provide for an equitable manner in which such property is to be disbursed.
The court considers section 236 (part B, subd 5, par e) of the Domestic Relations Law which provides that “[i]n any action in which the court shall determine that an equitable distribution is appropriate but would be impractical or burdensome *** the court in lieu of such equitable distribution shall make a distributive award in order to achieve equity between the parties. The court in its discretion, also may make a distributive award to supplement, facilitate or effectuate a distribution of marital property.” Under section 236 (part B, subd 1, par b) of the Domestic Relations Law, a distributive award “shall mean payments * * * awarded by the court * * * payable either in a lump sum or over a period of time in fixed amounts.”
The court is cognizant of the fact that the marital property i^~ almost exclusively nonliquid and not readily convertible into cash for immediate distribution. For instance, the husband’s equity in his New York co-op residence cannot be recouped by forced sale; the Green Meadow acreage appraised value is based on a possible 1983 sale. His Paris studio co-op may be retained as necessary for his European business use. Division of the Group A assets may require the husband to gradually sell his securities and collect other" receivables, particularly in view of his claimed liabilities of about $250,000. Therefore, a distributive award of all marital property is appropriate, practicable and equitable under section 236 (part B, subd 5, par e) of the Domestic Relations Law. Payment of this award shall be in equal amounts over a period of three years as permitted under section 236 (part B, subd 1, par b), and as determined hereinafter. Such payments under section 236 (part B, subd 1, par b) are not treated as ordinary income to the wife under the United States Internal Revenue Code.
*988 Accordingly, the wife is entitled to a distributive award of 50% of the net value of such marital property as previously determined, after deducting capital gains taxes even though sales of the marital property are not being compelled. This is justified because otherwise the husband would ultimately absorb the full cost of any sale of marital property. The court, however, is unable to determine at this point in time the exact dollar amount of such an award. Evidence was lacking as to the capital gains tax on certain property such as the Paris studio and the recent changes in the capital gains taxes have altered the net cash value of many of the assets as provided at trial. The court, therefore, directs the parties to submit proposed judgments reflecting exact dollar amounts and the resulting sums available for distribution, using the following guidelines. The wife shall be entitled to:
(1) one half the marital property or one sixth of the appraised value of Green Meadow Farm ($357,600) minus 1982 capital gains taxes and costs equal to approximately $47,000 for the wife;
(2) one half the appraised value of the Paris studio co-op ($42,857) minus capital gains taxes and costs equal to approximately $17,000 for the wife;
(3) one half the cash and receivables ($42,972) equal to $21,486 for the wife;
(4) one half of the securities ($176,705) equal to $88,352 for the wife;
(5) one half the equity in the New York City co-op ($103,056) equal to $51,539 for the wife.
The distributive award to the wife of the above marital property shall be paid as follows: within 15 days of the date of the entry of the judgment herein the husband shall pay to the wife $10,000; within 90 days of the date of entry of the judgment herein the husband shall pay to the wife one third of the total distributive award less $10,000 previously paid. On the annual anniversary date of this payment in 1983 and 1984, the husband shall pay to the wife the remaining two equal installments.
Additionally, the wife shall receive as a distributive award one half of the marital property of the Avenue Foch *989 co-op or 45% of the actual sale price of the apartment minus capital gains taxes and costs which equals approximately $270,000 within 30 days of the sale as provided for hereinabove. The wife or her estate shall also be entitled, should she predecease her husband, or remarry, to immediately receive as a distributive award the one-half cash surrender value of the $65,000 life insurance policy held by the husband equal to $12,250 and one half the equity in the profit-sharing plan as of the date of trial equal to $60,470.
III. MAINTENANCE AWARD
The court addresses itself to the permanent maintenance to which the wife is entitled pursuant to section 236 (part B, subd 6, par a) of the Domestic Relations Law which relevantly provides as follows: “the court may order * * * maintenance to meet the reasonable needs of a party to the matrimonial action in such amount as justice requires, having regard for the circumstances of the case and of the respective parties. In determining reasonable needs the court shall decide whether the party in whose favor maintenance is granted lacks sufficient property and income to provide for his or her reasonable needs and whether the other party has sufficient property or income to provide for the reasonable needs of the other.”
In determining the wife’s reasonable needs, there is no question that the wife here lacks sufficient property and income to be self-supporting while her husband’s property and income is sufficient to meet her reasonable needs. Section 236 (part B, subd 6, par a, els [1]-[10]) of the Domestic Relations Law séts forth 10 factors which must be considered by the court in determining the amount and duration of maintenance. Some of these factors duplicate those considered for equitable distribution although in somewhat different language, i.e., the income and property of each; marital duration; age; health; the capacity to be self-supporting or future financial circumstances; and if custodial unemancipated children are in the household. In this regard the same considerations as found herein with respect to equitable distribution are equally relevant to maintenance. And, of course, the maintenance award is interrelated to the distributive award and the manner of *990 payments for the court must balance these two sources of financial support to achieve an equitable result.
In addition, the wife’s contributions and services are considered and they were substantial as a homemaker, spouse, mother of four sons, and manager of the households, both here and abroad. Her faithful devotion, her social companionship, intelligence, charm, friendships with the wives of his business contacts and linguistic fluency were all of importance to the husband in his worldwide social circles and in his career. (Domestic Relations Law, §236, part B, subd 6, par a, cl [8].) This marriage was one in which the woman relinquished a budding career, to raise a family and to be totally supported and dependent upon her husband in accordance with his wishes. The court finds that there was insufficient proof of any wasteful dissipation of family assets by either spouse. (Domestic Relations Law, § 236, part B, subd 6, par a, cl [9].) The testimony by the husband as to his complaints and their arguments over claimed monetary extravagance by his wife were not of the level which could be characterized as the squandering of or the “wasteful dissipation” of “family assets”. Nor can it be said that her desire to support her family members and his acts of generosity in this regard constituted wasteful dissipation of family assets.
The parties’ standard of living, particularly during the immediate preseparation and postseparation period either in 1972 or 1973 and to some extent until the commencement of his action in 1977, is a relevant but not controlling factor in determining the maintenance award. (Domestic Relations Law, §236, part B, subd 6, par a, cl [6].) Their marital standard of living was luxurious and elegant — including annual European ski vacations; frequent transatlantic trips; a private club membership; gracious entertainment of foreign dignitaries and other high governmental officials and important business contacts; summer vacations and extensive traveling in fashionable wealthy social circles. However, this standard was reduced of necessity during the separation period, especially with respect to travel as the wife was no longer a custodial parent, nor did she participate in the husband’s business entertainment.
*991 The wife claims her reasonable maintenance needs are based on a projected 1980 standard of living budget while the husband claims they should be based on 1973 expenditures and standard of living.
The wife’s projected summary schedules of 1980 budget expenses were unsubstantiated by bills of any type even though the wife had the fullest opportunity on cross-examination to compel her husband to produce such bills all of which were under his control. On the other hand, the husband failed to produce any underlying bills and payments either in 1973 or for 1980, or any year to rebut the wife’s projected 1980 expenses. Her claim for maintenance, including her taxes, in the sum of $375,262 under all the circumstances is in the court’s opinion totally unrealistic.
Included in the wife’s claimed needs is continued annual maintenance of the 270 co-op and an allowance for her sister. It is inconsistent for the wife to argue that the 270 co-op is immune from marital property distribution, an argument hereinabove sustained, and then to include maintenance for this nonmarital property as a necessity for herself. Maintenance for this co-op is now the legal obligation of her brother. The temporary alimony which included this expense was awarded pending judicial resolution after trial of.the status of the 270 co-op property. As for the sister’s allowance, this was an act of voluntary generosity on the part of the husband and carries no legal obligation and is, therefore, not included in the wife’s maintenance needs.
The wife also includes as part of maintenance the expenses for the use and occupancy of two homes — the Paris Avenue Foch co-op and a New York City rental apartment with utilities for both and full-time resident maid service for the Avenue Foch co-op.
The two residences are unreasonable for the wife under all the circumstances herein. The wife is no longer a custodial parent. Moreover, the standard of living of the parties did not include two full-time residences on both sides of the Atlantic Ocean. The Green Meadow farmhouse was at most a summer home and often rented. The wife is entitled to support for a single residence only.
*992 The court finds that many of her claimed maintenance needs are unreasonably excessive or unnecessary in view of her current divorced status and under all the circumstances. These include continued private club membership; her sister’s health insurance; a full-time resident maid; projected estimates for vacations, transatlantic trips, repairs, maintenance, redecorating and furniture for the Avenue Foch co-op; teas and restaurants; transportation and personal gift items.
The court awards the wife an annual maintenance sum of $65,000. In view of the nontaxable distributive award herein estimated within four years to be in the range of $500,000 and the income derived therefrom together with this maintenance, sufficiently provides spendable funds for the wife’s reasonable annual needs, notwithstanding the taxable impact to her of her maintenance award. Pursuant to section 236 (part B, subd 1, par a) of the Domestic Relations Law the court determines that maintenance shall be payable by the husband monthly each year on the first of each month in the sum of $5,416.77 unless the parties mutually agree otherwise as to the method of payments and shall terminate upon the death of either party or her remarriage. Payments shall commence upon entry of judgment and be prorated accordingly in the event judgment is not on the first day of a month.
The wife’s attorney is awarded an interim counsel fee of $10,000 payable by the husband within 30 days from entry of a judgment herein. The husband’s attorney requested deferral of the award of counsel fees until a court decision herein so that he would have an opportunity to prepare and submit an affidavit in opposition dependent upon his evaluation of the court decision. The court partially grants the husband’s attorney such relief subject to the interim award herein. The court is of the opinion that the wife’s attorney is entitled to a minimum basic fee at this juncture without prejudicing the husband’s right to oppose the fees beyond this minimum sought by .the wife’s attorney. Accordingly, the husband’s attorney shall submit on notice simultaneously with the proposed judgment, his opposition or consent to the fees sought by the wife’s attorney with a reply of the wife’s attorney within 10 days thereafter.
*993 The judgment of divorce was submitted and signed herein on September 28, 1980.