■ ELOISE R. JOHNSON, Respondent, v JAMES J. JOHNSON, Appellant. — Order, Supreme Court, New York County (Gabel, J.), entered June 11, 1982, granting plaintiff wife's motion for *pendente lite* relief in this divorce action to the extent of, *inter alia,* directing defendant husband to: pay $300 per week to plaintiff for her maintenance; pay $400 per week in child support for the parties' daughter; maintain and pay the expenses for the marital residence; pay the private school expenses for the daughter; and, to maintain in full force and effect the family health insurance, is affirmed, without costs. The parties have been married eight years. A seven-year-old daughter is the only issue. Plaintiff has custody of the daughter and the defendant has liberal visitation privileges. While married, the parties enjoyed a very luxurious life-style. The defendant's yearly income, as a high-level corporate executive, varied between $100,000 and $241,500. During some of these years, plaintiff augmented this income by earning approximately $35,000 a year as an advertising executive. Annually, each party realizes the income of approximately $25,000 tax free from their individual portfolios of municipal bonds. Defendant has $20,000 cash in a bank account. Both parties are currently unemployed. Plaintiff alleges that she cannot work because of a colitis condition. Since resigning in January, 1981 as executive vice-president of a major corporation, the defendant has been seeking a position as a corporate chief executive officer. Upon defendant's resignation, he received $100,000 as severance pay, before taxes, and the last installment was received in June, 1982. Part B of section 236 of the Domestic Relations Law sets forth the factors to be considered in the awarding of *pendente lite* relief. In pertinent part, paragraph a of subdivision 6 of this section states: "the court may order temporary maintenance or maintenance to meet the reasonable needs of a party to the matrimonial action in such amount as justice requires, having regard for the circumstances of the case and of the respective parties." Insofar as both parties have been unemployed since July 1, 1982, an appropriate test would be to hold the parties to the income they are "capable of earning by honest efforts". (*Kay v Kay,* 37 NY2d 632, 637.) We find on the fact pattern contained in this record that Special Term struck a proper and equitable balance. Concur — Ross, J. P., Asch and Fein, JJ.

Silverman and Bloom, JJ., dissent in a memorandum by Bloom, J., as follows: This action for divorce was commenced in April, 1982, after the effective date of the Equitable Distribution Law (Domestic Relations Law, § 236, part B). Prior to June, 1981 defendant had been a senior executive with the Singer Company earning in excess of $200,000 a year. In June, 1981, after losing out in the competition for chief executive officer of the Singer Company he reached an agreement to leave that company. Singer agreed to continue his compensation until he found a new position or until June 30, 1982, whichever came first. Substantially simultaneously with the commencement of this action, plaintiff made application for temporary alimony and child support as well as other temporary relief. The proof indicated that defendant had not yet secured another position. Indeed, in his answering papers, he indicated that despite his very substantial income as a corporate executive he had long considered a career change to rid himself of the severe strains and pressures

which were incident to corporate executive life. In fact, he asserts that he had frequently discussed with plaintiff prior to their separation, his desire to obtain a teaching position or an appointive position with the Federal Government. As part of his plan he had taken the law school aptitude test and had applied for admission to and been accepted at New York University Law School. Moreover, the proof indicated a situation somewhat unusual in the context of a contested matrimonial action. Assets of the parties were and are held substantially equally. The major asset is a four-bedroom house with a tennis court and swimming pool located in Quogue, New York, valued at approximately $500,000 subject to a mortgage of $57,000. Since the parties came to a parting of the ways defendant lives in the house while the wife lives in a rental apartment in the city. The co-operative apartment hitherto owned by the parties was sold. The defendant divided the proceeds equally and arranged for the purchase of tax-free municipal bonds which provide each with a monthly income of $2,000. The proof with respect to the capacity of the plaintiff to work was somewhat murky. Prior to 1977 plaintiff was an advertising executive whose annual salary exceeded $35,000. In 1978 she left that position and became a free-lancer. Though initially the results were quite poor, the 1981 tax return of the parties showed that her gross income exceeded $62,000 with a claimed net loss for tax purposes of approximately $24,500. She now contends that she is unable to work steadily because of ill health. Special Term required defendant to pay $300 weekly for temporary alimony and $400 weekly for the support of the seven-year-old child of the marriage. Additionally, defendant was required to pay for the private schooling of the child, who attends Brearly School — a charge of approximately $6,000 per year — maintain health insurance coverage for the family and to pay for the maintenance of the Quogue home at a cost of approximately $13,500 per year. Bearing in mind that defendant is currently unemployed and is obliged to pay the alimony required to be paid incident to the termination of his prior marriage, which, together with college expenses of the children of that marriage aggregates an additional sum which runs between $12,000 and $14,000, it becomes apparent that defendant cannot meet these obligations without rapidly depleting his capital. Accordingly, we would reduce, rather substantially, the amount payable by defendant for temporary alimony and child support.