OPINION OF THE COURT
Jeffrey G. Stark, J.
In this divorce action brought by a wife against her multimillionaire husband of 40 years, the wife now moves for temporary maintenance and interim counsel, appraiser and accountant fees. The motion raises fundamental questions about pendente lite applications both substantive and evidentiary, pertinent to the rights of rich, as Well as poor, litigants:
(1) Should a court hearing such a motion seek to maintain a rough equality of economic condition prior to judgment to insure that the results of any trial, and any negotiations, are arrived at fairly and not as the result of duress or overreaching?
(2) Should the court presume, absent proof to the contrary, that the financial needs of the parties are the same such that the husband’s evidence as to his reasonable needs can be taken into account in determining the wife’s entitlement to temporary maintenance?
(3) Is it reasonable to expect that a party opposing an interim award for counsel fees, appraiser fees and the like, *553 whose own expenses for such services are substantially less than those requested, will demonstrate that fact in his opposition papers such that in the absence of such evidence the court can presume the opposing party’s proof would support the moving party’s request?
For the reasons that follow, this court answers each of these questions in the affirmative.
FACTS
The parties have been married for almost 42 years and are each 60 years old. They have raised four children, none of whom is living at home. Throughout most of the marriage, the plaintiff wife cared for the family while the husband built a very substantial business enterprise. It appears that all the assets of the parties are marital property.
In recent years, the wife has obtained part-time employment as a reading teacher, apparently never earning more than $6,000-$7,000 per year. In 1981 and 1982, the family income as reported on Federal income tax returns was $316,000 and $325,000, respectively. All but $12,000 of this was derived from the husband’s business or assets controlled by the husband. The taxes paid on the 1982 income were approximately $155,000 leaving a net disposable income of approximately $170,000. The husband’s current income is approximately the same as last year’s. The wife has little, if any, income.
With respect to the assets of the parties, the wife claims — and defendant does not deny for purposes of this motion — that the value of defendant’s interest in his business is $10,000,000. Defendant, who did not submit a net worth statement, concedes that his securities portfolio is worth approximately $473,000. He does not contest plaintiff’s statements that he also owns a loan receivable in the amount of $108,000, an interest in a limited partnership for which he paid $75,000, two parcels of real estate in California, one in New Jersey, one in Massachusetts, an interest in a corporate pension plan and an individual retirement account. The wife does not know the value of these holdings and defendant does not disclose same.
In addition to the above, the parties own in joint names the marital residence located in Massapequa, New York *554 (valued by the husband at $375,000), and a condominium in Florida (said to be worth $125,000).
The plaintiff wife holds in her name title to two unimproved lots in Florida purchased 10 years ago for $12,000 and said to be worth considerably more today; also, a vacation home in Deposit, New York, valued at $85,000, which is presently used by both plaintiff and defendant. In addition, the plaintiff has liquid assets of approximately $30,000. Above this, she shows without contradiction that she previously owned a 50% interest in two buildings sold to the husband’s corporation in 1974 for a net of $544,872, which sum was fully paid in installments by July, 1978, but that plaintiff never received any of this money all of which was converted by the defendant.
The husband does not contest on this motion his ability to pay the amounts demanded by plaintiff for temporary maintenance, counsel fees, accountant and appraiser fees. The issues in dispute are the parties’ preseparation standard of living and the wife’s present “needs”. With respect to these, the defendant presently pays to plaintiff $1,350 per month and also pays her medical expenses, carrying charges on the marital home and the vacation home in Deposit. (There is some question whether the defendant incurs any expense for the Florida condominium which he apparently leases to his business.) Defendant hotly contests plaintiff’s claim to carrying charges on the marital home and the Deposit residence plus $3,500 per month maintenance (which figure includes an estimated $1,000 per month for taxes), and challenges her figures for food, vacations, entertainment, house repairs, transportation, etc., all of which add up to the sum of $2,500 per month.
Of interest, there is annexed to plaintiff’s papers a copy of a budget which plaintiff says (and defendant does not deny) defendant prepared to show his 1982 estimated personal expenses. These show expenses of $39,000 per year, or $3,250 per month, in addition to maintenance of the marital home, the Deposit home, and defendant’s residence in New York, taxes, and support of the plaintiff.
DISCUSSION
Temporary Maintenance
The dissolution of a marriage, particularly one of long duration, is one of the most emotionally debilitating exper *555 iences a human being can suffer.[1] As a consequence, even where there are very substantial assets to be shared after divorce and no reasonable need to fear economic privation, such fears are commonplace in these proceedings, undoubtedly because of the emotional trauma attending the breakup of a marriage. As a practical matter, thon, should one spouse have substantially greater economic leverage during the litigation (and negotiation) process than the other, that fact may have a profound effect on the ultimate resolution both because of its psychological impact on the parties and because of its effect on their ability to finance the litigation. It is particularly unfair to “nickel and dime” a wife in the period (now frequently very protracted) prior to trial just because her husband presently has control of the purse strings. Indeed, the principal intendment of the Equitable Distribution Law (Domestic Relations Law, § 236) was to free spouses (particularly wives) from the tyranny of “title” ownership. (Scheinkman, 1981 Practice Commentary, McKinney’s Cons Laws of NY, Book 14, 1983-1984 Pocket Part, Domestic Relations Law, C236B:4 [“Marital Property”].) However, if that tyranny is allowed to continue up to the date of final judgment, the legislative purpose will, in many instances, have been defeated. Consequently, a rough economic equality prior to trial should be maintained so that the negotiations of the parties are truly free of duress and overreaching and “are arrived at fairly and equitably”. (Christian v Christian, 42 NY2d 63, 72.)[2]
*556 This result seems particularly appropriate in the present case. The emerging trend in cases involving long marriages is for the court to order substantially equal distribution of marital property. (See, e.g., Jolis v Jolis, 111 Misc 2d 965 [ordering equal distribution of marital property in 41-year marriage]; cf. Perri v Perri, 97 AD2d 399 [2d Dept] [holding that division of marital property should have been close to, if not totally, equal where marriage of long duration in which parties made equal noneconomic contributions to the marriage]; see, generally, Scheinkman, op. cit., C236B:12 [Factor 2].) In a case such as this, then, involving a 40-year marriage where the wife was always financially dependent upon the husband, substantial equality in the ultimate distribution of marital property should be presumed.* *[3]
Since equality of economic circumstances after the dissolution of the marriage is a probable, albeit not preordained consequence, it is appropriate that the court take this into account in determining “the financial need of the party making the [pendente lite] application.” (Jorgensen v Jorgensen, 86 AD2d 861; cf. Johnson v Johnson, 91 AD2d 951 [1st Dept].) In a closely analogous context, our courts have deemed relevant, in passing upon a wife’s application for temporary support, the probability that the husband will prove at trial that the wife’s misconduct has barred her from any final relief. (Cipriani v Cipriani, 45 Misc 2d 500, cited in Hyman v Hyman, 56 AD2d 337, 338.) By parity of reasoning, the courts should give consideration to the likelihood that the wife will obtain a substantial final judgment.
For similar reasons as are stated above, in determining the amount of the wife’s financial need, there would appear to be no logical reason to exclude consideration of the *557 husband’s claims as to his reasonable needs at least where, as here, there is no claim by either party that his or her needs substantially differ from those of the other spouse. Equality of needs, pendente lite, should be presumed, and equality of expenditures should normally be maintained. Indeed, were proof offered that prior to final judgment a husband was substantially preferring himself with respect to the expenditure of money, a strong case for preliminary injunctive relief would be demonstrated inasmuch as such conduct would tend to render a final judgment ineffectual. (CPLR 6301; see Bergman v Bergman, NYLJ, Aug. 15, 1983, p 18, col 5.) In this case, then, the defendant’s projected needs of $3,250 per month net are relevant to the plaintiff’s claim.
For all the foregoing reasons, the court finds that plaintiff’s request for $3,500 per month temporary maintenance (including $1,000 for taxes) is reasonable. (Cf. Berley v Berley, 97 AD2d 726 [$1,250 per week maintenance and child support ordered where husband’s income in excess of $200,000 per year and net worth over $5,000,000]; see, also, Brody v Brody, 98 AD2d 702 [$630 per week temporary maintenance and child support ordered in addition to carrying charges on marital home, medical expenses, insurance expenses and religious school tuition, where husband has disposable income of $300,000 per year].) Defendant shall pay said sum retroactive to August 1, 1983 (see Domestic Relations Law, § 236, part B, subd 6, par a) with a credit for sums actually paid by defendant to plaintiff since that date. Payments shall be made on the first day of each month by check or money order. In addition, the defendant shall continue to pay the mortgage, taxes and electricity and fuel for the marital residence and the house in Deposit, New York. (Domestic Relations Law, § 236, part B, subd 8, par b.)[4]
Counsel Fees
Turning to the issue of interim counsel fees, the papers show that plaintiff paid to her counsel, who is an experienced and well-respected member of the matrimonial Bar, *558 a retainer of $3,000 before this action was initiated and at a time when it was hoped an agreement could be expeditiously negotiated. Since that time, approximately 90 hours have been expended by plaintiff’s counsel, who requests an interim award of $35,000 based upon an estimated additional 500 hours through trial of this action.
Although the husband states plaintiff’s estimates of counsel fees are outlandish, it is significant that he has not disclosed his own expenditures to date or the terms of his attorney’s retainer.
Given the number of assets which must be evaluated in this equitable distribution proceeding and the large sums at stake, considerable effort and expertise will be required to properly prepare this case for trial. (See Ahern v Ahern, 94 AD2d 53.) This is particularly so since the husband’s principal asset — his controlling interest in Duro Dyne Corp. — has apparently been converted into preferred shares of stock after the common shares of the corporation were unilaterally transferred by defendant in trust for his children and grandchildren. In such a situation, establishment of the rights of the interested parties to ownership of the common stock, and valuation of any shares found to be owned either legally or equitably by defendant, involve sophisticated and time-consuming preparation before trial and proof at trial.
A wife is not required to deplete her limited capital to pay for counsel fees. (Hyman v Hyman, supra; Lubin v Lubin, 66 AD2d 677 [1st Dept]; cf. Kaplan v Kaplan, 77 AD2d 891 [2d Dept], app dsmd 51 NY2d 822.)[5] In the context of this case, the plaintiff’s liquid assets of $30,000 are deemed “limited”. (See Lubin v Lubin, supra, involving $35,000 worth of stock.) The plaintiff should not be required to litigate this action with no cash at her disposal in opposition to a husband with nearly a half million dollars of liquid assets.
With respect to the reasonable value of temporary attorney’s fees, the husband’s failure to disclose his own arrangements with his attorney leads to the presumption that, if disclosed, such evidence would support plaintiff’s *559 contentions. It is logical to infer that if the husband’s prospective attorney’s fees were substantially less than those demanded by plaintiff, he would have disclosed that fact to the court. Having failed to do so, an unfavorable inference arises. (Richardson, Evidence [Prince, 10th ed], § 92.) This result is consonant with the principle, discussed above, that in a matrimonial action where both parties are presumed to be entitled to relief (see Bergman v Bergman, NYLJ, Aug. 15, 1983, p 18, col 5, supra), there should be rough equality in the resources available to each party in the course of the contest. See Sassower v Barone (85 AD2d 81, 89), holding that an attorney retainer agreement with an indigent wife providing for a fee of $100 per hour was not unconscionable per se: “If this were, indeed, the law, its effect would be that a wealthy husband could obtain the services of highly paid (and presumably seasoned and superior) matrimonial counsel, while the indigent wife, essentially, would be relegated to counsel willing to take her case on a poverty basis. This would be fraught with the danger of inequality of representation, a situation that we should not encourage in matrimonial litigation.” (Emphasis added.)
Consequently, on this record the court would consider the plaintiff’s request for a $35,000 counsel fee through the trial of the action as being reasonable given the amounts at stake, the complexity of the issues presented, the standing of the respective counsel, and the husband’s failure to disclose his own arrangements.
Nevertheless, it is unnecessary at this time to make an award which will carry through the trial of the action. Because further interim relief can be sought if circumstances so require, and because the potential in this case for costly pretrial preparation may not be actualized, an interim award of $15,000 will presently be ordered with plaintiff granted the right to apply before, or during, trial for an additional award. This sum shall be paid by defendant directly to plaintiff’s attorneys within 30 days of service of a copy of this order with notice of entry.[6]
*560 Finally, it is clear that the assistance of appraisers and accountants will be essential for plaintiff to properly prepare for trial. (See Ahern v Ahern, supra.) On the basis of the fee quotations contained in plaintiff’s papers (again defendant has not offered any evidence of his own as to the reasonable cost of such services and the court presumes his evidence would support the plaintiff’s application), plaintiff is awarded interim fees of $8,000 for appraisers, actuaries and accountants, with the right to make further application before, and during, trial for an additional award(s). In addition, at trial defendant may seek a credit for a part, or all, of said sums paid based upon the ultimate disposition of the action. (Carella v Carella, 97 AD2d 394.)

. See, e.g., Brody, Divorce’s Stress Exacts Long-Term Health Toll, New York Times, Dec. 13, 1983, § C, p 1.

. The other side of the coin, of course, is that the spouse (usually the husband) who pays temporary support should be entitled to receive a credit at the time of final judgment to the extent necessary to achieve true equitable distribution. Since temporary support is only awarded where the financial needs of the wife require it (Jorgensen v Jorgensen, 86 AD2d 861), it is unfair to require the husband to pay temporary support because the wife has not received her final award, and yet to deny the husband a credit once the wife no longer has a financial need.
Especially is this so since the moving papers on a pendente lite application are often false and in any event are usually unsupported by sufficient documentation to enable the court to rationally resolve the opposing contentions of the parties. As a practical matter, unless an error in favor of the wife can be corrected in the final judgment, courts will tend to be overly conservative in awarding the wife pendente lite relief. Thus, it is in the interest of both parties that the court rendering a final judgment be able to rectify the inequities, if there be any, occasioned by a temporary award.
Alan Scheinkman (1981 Practice Commentary, McKinney’s Cons Laws of NY, Book 14, 1983-1984 Pocket Part, Domestic Relations Law, C236B:19) suggests the power to award a credit per se is lacking, but that the same result can be achieved in setting the amount of “permanent” support. Notwithstanding, since the “equitable disposition of *556 property” section (Domestic Relations Law, § 236, part B, subd 5, par d, cl [10]) requires the court to consider, inter alia, “any * * * factor which the court shall expressly find to be just and proper” in a case such as this where substantial property will be the subject of distribution, there is no reason why the court cannot take temporary support payments into account in determining the amount of such property. This is far different than requiring a wife to repay support out of her own assets, which depletion of assets the Legislature intended to proscribe (cf. Hyman v Hyman, 56 AD2d 337 [wife not required to invade “limited savings” before entitled to temporary support or counsel fees]).

. Indeed, the wife in such a case may be entitled to even greater than an equal share of the marital property when all of the statutory criteria are considered. (See Foster, NY Equitable Distribution Divorce Law, p 43.)

. Insofar as the wife also requests that defendant “restore” to her various credit cards, apparently intending by that to mean unlimited use of defendant’s credit, this request is denied. (Troiano v Troiano, 87 AD2d 588.)

. Although the reasons for so holding are not usually articulated, the desirability of maintaining a rough parity during litigation would seem to be paramount.

. Although section 237 of the Domestic Relations Law, as amended by chapter 287 of the Laws of 1983, prohibits modification of a temporary counsel fee award, for the reasons stated above with respect to temporary maintenance the husband should be entitled, where appropriate, to a credit on account of temporary counsel fees against property ordered distributed to the wife in the final judgment.