DORIS L. SASSOWER, Appellant, v SALLY BARONE et al., Respondents.

Second Department, February 22, 1982

**APPEARANCES OF COUNSEL**

*George Sassower* for appellant.

*Edward H. Petruzzi* for Sally Barone, respondent.

*Milton S. Zeiberg* for Joseph Barone, respondent.[*]

**OPINION OF THE COURT**

GIBBONS, J.

The questions presented here for resolution are: (1) whether an award of counsel fees to a plaintiff wife con-

---

[*] Appellant counsel for defendant, Joseph Barone, did not represent said defendant at Trial Term.

tained in a judgment of divorce may constitute *res judicata* in a subsequent plenary action for counsel fees against the husband on the theory of necessaries and against the wife on her retainer agreement, where, as part of their agreement to reconcile, the plaintiff wife withdrew her appeal from the judgment where the sole issue for appellate review was the inadequacy of the counsel fees allowed; and (2) whether in a subsequent plenary action for counsel fees against the parties, a retainer agreement providing for legal services at $100 per hour, upon which a cause of action against the wife is founded, may be deemed unconscionable solely for the reason that, at the time it was entered into, the wife was not gainfully employed and was without assets. The instant litigation arose prior to the amendment of subdivision (a) of section 237 of the Domestic Relations Law, under which it is now provided that "[a]ny applications for counsel fees and expenses may be maintained by the attorney for either spouse in his own name in the same proceeding" (L 1978, ch 444, eff July 19, 1978, as amd by L 1980, ch 281; cf. *Sadofsky v Sadofsky,* 78 AD2d 520).

On April 25, 1974, Sally Barone, a housewife not gainfully employed and the mother of one child, retained the plaintiff, Doris L. Sassower, as her attorney to commence a divorce action against her husband, defendant Joseph Barone. At that time, she stated that she had no money or property other than some jewelry and that everything was in her husband's name, including "the house, the car * * * the bank accounts * * * and the bars and restaurants he owned." The retainer agreement provided for a fee of $100 per hour and stated that it was "without prejudice to your right to recovery against my husband for the full value of the services which you will render to me in the action and in the negotiation of any settlement." Mrs. Barone paid her counsel $1,500 on account and the divorce action was soon after commenced.

In his answer Mr. Barone interposed a counterclaim for divorce and demanded custody of the child. There then ensued protracted proceedings between the parties in both the Family Court and in the divorce action in the Supreme Court.

On November 9, 1976, Mrs. Barone's attorney, plaintiff herein, applied for an interim counsel fee. In her affirmation, plaintiff stated that her services up to that point exceeded $15,000 based on the retainer rate of $100 per hour and that she had received no more than the initial payment of $1,500. The motion was referred to the trial court for disposition.

The trial before the court (SULLIVAN, J.), without a jury, commenced on November 23, 1976 and continued for nine days. On January 31, 1977, the court rendered a decision granting a divorce and the custody of the child to Mrs. Barone and directed that "all issues regarding property rights, and alimony and support * * * be tried separately." The court, in its decision, did, however, award plaintiff an "additional" counsel fee of $3,000 to be paid by Mr. Barone for legal services furnished up to January 31, 1977. In fixing this amount the court concluded that the total value of all the legal services to Mrs. Barone, rendered to that date, were worth $4,500 and, after deducting therefrom the $1,500 previously paid to the attorney by Mrs. Barone, arrived at the $3,000 figure. No testimony was taken on the issue of counsel fees at that time, and the court did not request counsel to furnish her affidavit of services. The court, in its decision, predicated its determination on plaintiff's interim request for fees, which was general in nature and contained no evidentiary showing of what services were performed.

A final judgment of divorce, including said award of counsel fees, was entered on April 28, 1977.

On May 20, 1977, Mr. Barone filed a notice of appeal from the entire divorce judgment, except, *inter alia,* as to the award of counsel fees. On May 27, 1977, Mrs. Barone filed a notice of cross appeal which was limited solely to the inadequacy of the counsel fee awarded.

After the entry of the judgment and during the pendency of the appeals, negotiations continued between the attorneys for the parties, on matters including the question of counsel fees, up to the time when Mrs. Barone called to tell her counsel that she did not wish to continue the appeal and terminated her services as counsel. Her discharge was confirmed by letter of Mrs. Barone, dated August 25, 1977.

On November 30, 1977, Mrs. Sassower commenced a plenary action to recover her legal fees. Although not separately stated, she alleged a cause of action against Mr. Barone for "necessaries furnished to his wife" and a cause of action against Mrs. Barone based on the retainer agreement. She alleged that her services were of the value of $25,000, plus disbursements of $200, making a total of $25,200, and, after deducting the $4,500 previously paid, she sought a recovery of $20,700.

The defendants appeared by separate counsel. The affirmative defenses interposed by each of them were similar and alleged essentially that the counsel fee awarded in the judgment of divorce of "the additional sum of $3,000" paid by Mr. Barone, over and above the initial $1,500 paid by Mrs. Barone, aggregating a total amount of $4,500, constituted a *res judicata* finding of the value of Mrs. Sassower's services up to January 31, 1977, the date of the decision in the divorce action.

At the trial of her action from which this appeal stems, Mrs. Sassower testified that she was relegated to such action because her discharge as Mrs. Barone's attorney aborted the prosecution of the cross appeal which sought to review the inadequacy of the counsel fee award made by the trial court. She testified that her professional services exceeded 400 hours including the protracted pretrial proceedings, a nine-day trial, and that her expertise and the successful results achieved merited the contracted $100 per hour fee.

Mrs. Barone testified that after the judgment of divorce had been obtained by her, Mr. Barone gave her a gift of an automobile and other items and that, with her consent, he returned to the marital home despite the fact that she had been awarded exclusive possession. During that period they tried to resolve their marital problems and she discharged Mrs. Sassower as her attorney.

In its decision after the trial, the court (MARBACH, J.) held that the award in the judgment of divorce of "the additional sum of $3,000 * * * for all services rendered" up to the date of the decision was "absolutely binding as *res judicata*" as to Mr. Barone, and that Mrs. Sassower's

subsequent legal services to Mrs. Barone, up to the time of discharge, merited a further award of $1,000 to be paid by Mr. Barone.

Concerning the cause of action against Mrs. Barone, the court stated that the retainer was unconscionable because "[w]hen an attorney knows that the lady does not have assets, it is [the attorney's] obligation to take [that] into account * * * Attorneys who take on for indigent or nearly indigent wives the prosecution of a matrimonial action are making a substantial personal sacrifice in many cases. They can never be adequately compensated.".

The court continued:

"I do find that the plaintiff, Doris Sassower, has a degree of expertise and a great deal of experience in the field of family and matrimonial law, and that she is entitled to adequate compensation, in part, based upon such expertise. The number of hours, the difficulty of the litigation must also be taken into consideration. It was difficult; it was long. The result produced in obtaining the divorce, in obtaining for the wife the custody of the child, which was so important to the wife, deserves important consideration. But the overwhelming duty of an officer of this court to a just compensation in the light of the resources of the client does not permit me to do merely a mathematical job of multiplying some four hundred or five hundred hours by $100 an hour and reach an award of some $40,000 or $50,000 as appropriate to this case * * *

"Under all the circumstances of this case, I find that the total value of the services rendered is the sum of $10,000, of which $4500 has already been paid, and I have given $1,000 more here by way of an award or verdict against the husband. The balance, therefore, of $4500 is to be entered in favor of the plaintiff against the defendant, Sally Barone."

Upon the succeeding colloquy, the court, in explaining its ruling, said:

"I will state that on the basis of the time put in — and it appears necessarily put in — by the plaintiff, both in the courtroom and in the preparation of the documents encompassed in this very bulky file, in the conferences at home

and in her office, on the basis of her standing at the bar and her expertise, would, if the client had substantial assets, have amounted to the sum of $40,000, if that were the sole test.

"I say that factually, that is the proof. But, again, I reiterate that such services, even having such a value, are subject to the *philosophically imposed discount*.

"But if you are talking about what she did, what the plaintiff did, she did render substantial services of value, and except for this philosophy, the value of these services would be $40,000." (Emphasis added.)

■■ In making its determination, the trial court erred. We hold that, under the circumstances herein, the defendants are estopped from asserting the affirmative defense of *res judicata* to the cause of action for necessaries against Mr. Barone and the cause of action on the retainer against Mrs. Barone. As to Mrs. Barone, we also, under the facts and circumstances of this case, reject the concept that her limited resources, per se, rendered the retainer fee of $100 an hour unconscionable.

## I

### THE CAUSE OF ACTION AGAINST MR. BARONE FOR NECESSARIES

Traditionally, legal services rendered to a wife, including those rendered in matrimonial proceedings, have been considered necessaries, and her counsel has a common-law right to bring a plenary action against the husband for the reasonable value thereof (*Goldberg v Keller*, 236 App Div 541; *Horn v Schmalholz*, 150 App Div 333; *Schwartz v Aberbach*, 66 Misc 2d 246). Although section 237 of the Domestic Relations Law provides for an allowance of counsel fees in matrimonial actions, counsel for one spouse may resort to a common-law action for necessaries against the other spouse (see *Matter of Steingesser*, 602 F2d 36; *Phillips, Nizer, Benjamin, Krim & Ballon v Rosenstiel*, 490 F2d 509, 517-518; *Schwartz v Aberbach, supra; Levine v Levine*, 48 Misc 2d 15, affd 50 Misc 2d 39). However, where an award of counsel fees to be paid by the opposing spouse was previously made in the matrimonial action, such award is generally the measure of that spouse's obligation for the legal services (see 16 NY Jur [rev ed], Domestic Relations,

§ 638, p 195; *Turner v Woolworth,* 221 NY 425). In sum, the general rule is that where the special statutory remedy is invoked, the right of action at common law no longer subsists (*Goldberg v Keller, supra,* p 542). This is a logical and particular application of the rule of *res judicata.*

Here, the statutory remedy was only equivocally invoked. Shortly before the matrimonial trial, Mrs. Sassower sought "an interim counsel fee * * * for professional services and disbursements that may reasonably be required in [Mrs. Barone's] prosecution of this action and in defense of defendant's counterclaim." Her moving affirmation stated that the trial of the issue of custody required that Mrs. Barone should be granted the opportunity to present "the best evidence at her disposal unhampered by the lack of funds, while her defendant-husband is making lavish and extravagant expenditures for his presentment." She also stated, in a general and conclusory fashion, that the court files reveal the deluge of work that she was forced to perform because of defendant's counsel's dilatory tactics, including defiance of court orders, resort to "multifurcated and duplicative motions" and a fruitless two-day inquest, all of which consumed 150 hours of work. The fact is, however, that the inartistic affirmation, which was nonspecific both as to the past and as to the future (the latter in that she did not state in what manner the requested "interim counsel fee" would be used to properly prepare for trial on the issue of custody), could not possibly be the basis of a rational award of counsel fees, either "interim" or otherwise, because of its obvious evidentiary deficiency in failing to detail the time spent and the nature of the services rendered. However, we need not further analyze this question because it is made moot by our determination of a more vital issue, i.e., that the acts of both Barones estop them from asserting the affirmative defense of *res judicata.*

Assuming that recourse to the matrimonial court for a counsel fee had been invoked at nisi prius, there is no doubt that Mrs. Sassower, properly relying upon her client's cross appeal under the then prevailing state of the law, was deprived of an appellate review of what she considered to be an inadequate award. The right to appeal

is "not to be denied without just cause" (4 NY Jur 2d, Appellate Review, § 3, p 57). Here, there *was* no just cause for such denial.

Mrs. Barone's agreement to the withdrawal of her cross appeal may have been in consideration of the withdrawal of Mr. Barone's appeal and, indeed, may have been based on an honest attempt by husband and wife to reconcile their differences, but by such act Mrs. Barone gave up nothing of her own. The only person who could directly benefit from the prosecution of her cross appeal was her counsel, whom she discharged after the successful completion of a bitterly fought divorce action. The only person who could be adversely affected by the successful prosecution of her cross appeal was her husband, the father of her child, with whom she was making an attempt at reconciliation. Whether Mr. Barone insisted upon this as a condition of reconciliation is irrelevant. The objective fact is that she surrendered another's right and that Mr. Barone could not but know that, under the circumstances, Mrs. Sassower's rights were prejudiced.

The doctrine of equitable estoppel "prohibits a person, upon principles of honesty and fair and open dealing, from asserting rights, the enforcement of which would, through his omissions or commissions, work fraud and injustice" (*Rothschild v Title Guar. & Trust Co.,* 204 NY 458, 464; see, also, *Selzer v Baker,* 295 NY 145, 149; *White v La Due & Fitch,* 303 NY 122, 128). As stated in New York Jurisprudence (vol 21, Estoppel, Ratification and Waiver, § 15, p 22), the doctrine "rests largely on the facts and circumstances of the particular case; consequently, any attempted definition usually amounts to no more than a declaration of an estoppel under those facts and circumstances." Where facts cry out for relief the court should do what it can, and equitable estoppel, where appropriate, is then one of its most useful tools. The doctrine of *res judicata* is not immune from this salutary doctrine (see 46 Am Jur 2d, Judgments, § 445).

■ Under the totality of the egregious circumstances herein, Mr. Barone is estopped from asserting *res judicata* as an affirmative defense to plaintiff's plenary action for the value of the legal services furnished to Mrs. Barone.

We, therefore, reverse the judgment entered on July 11, 1979 and remand for trial, *de novo,* the issue of the value of such legal services as necessaries.

## II

### THE CAUSE OF ACTION AGAINST MRS. BARONE ON THE RETAINER AGREEMENT

The trial court erred in its holding that the retainer agreement's provision for $100 an hour was, per se, unconscionable because of the indigence of Mrs. Barone, and that it was, therefore, "subject to [a] philosophically imposed discount." The court cited no authority for this principle, nor has counsel for respondent Sally Barone. If this were, indeed, the law, its effect would be that a wealthy husband could obtain the services of highly paid (and presumably seasoned and superior) matrimonial counsel, while the indigent wife, essentially, would be relegated to counsel willing to take her case on a poverty basis. This would be fraught with the danger of inequality of representation, a situation that we should not encourage in matrimonial litigation by novel court interpretation.

*Reisch & Klar v Sadofsky* (78 AD2d 517) involved an action on a retainer agreement which provided for the wife to pay $100 for each out-of-court hour of legal services, $125 for each nontrial hour spent in court, and $1,000 for each day of trial. On the issue of the propriety of the retainer agreement, this court declared (p 518): "[A] trial is necessary at which there will be a full exploration of all the facts and circumstances including the conditions under which the agreement was made, the extent of the services rendered and the value thereof * * * [T]he inquiry requires not only a consideration of the quantum of professional services rendered, but also whether the time claimed is reasonable for such work, and whether the amount demanded 'is out of proportion to the value of the attorney's services' (*Gross v Russo* [47 AD2d] 655) and is, therefore, unconscionable."

The determination of unconscionability of a matrimonial retainer, then, must be focused on the fair value of the services of the attorney and not alone on the assets of the

client, which, of course, may be one of the considerations in reviewing "the conditions under which the agreement was made" (*Reisch & Klar v Sadofsky, supra,* p 518). Since the trial court herein made the state of Mrs. Barone's finances the sole determinative factor, reversal of the judgment and remand for a new trial of the action against Mrs. Barone is required. At such new trial the issues of unconscionability of the retainer agreement and "the quantum of professional services rendered * * * and whether the amount demanded 'is out of proportion to the value of the attorney's services'" (*Reisch & Klar v Sadofsky, supra,* p 518) can be properly explored.

Here, not only did the trial court err in neglecting to examine the financial worth of the Barones, but, its manifest error is sharply pointed up in its allocation of 40% of the $10,000 counsel fee ($4,000) to the husband who appears to be possessed of substantial assets, and 60% of the counsel fee allowed ($6,000) to be paid by the wife who appears to have but nominal assets and is not gainfully employed.

Finally, where, as here, the action involves the determination of the fair and reasonable value of the attorney's services, the court may consider the hourly rate contained in the retainer agreement as some evidence of value. If found to be reasonable after a full inquiry into the extent of the professional labors performed, the expertise of counsel, the results achieved for Mrs. Barone, and the social standing and financial circumstances of the respective parties, it may be considered in the action for necessaries against the husband. With respect to the cause of action against the wife, the appropriate criteria for allocation should be utilized in fixing her portion of the liability incurred for the services rendered by her counsel under the retainer agreement.

On the new trial the court's determination should be based on a *de novo* evaluation of the attorney's services, upon a detailed record, and without regard to the prior determinations of $4,500 and $10,000 or the dictum of $40,000.

MANGANO, J. P., GULOTTA and O'CONNOR, JJ., concur.

Judgment of the Supreme Court, Westchester County, entered July 11, 1979, reversed, without costs or disbursements, and new trial granted, in accordance with the opinion herein.

Appeal from an order of the same court, entered June 27, 1979, dismissed, without costs or disbursements (see *Matter of Aho,* 39 NY2d 241, 248).

Appeal from an order of the same court, entered May 22, 1980, dismissed as academic, without costs or disbursements, in light of the determination on the appeal from the judgment.