OPINION OF THE COURT
David B. Saxe, J.
Must an attorney who has been discharged without cause refund to her former client the unearned portion of a “nonrefundable” advance retainer fee?
The defendant is a well-known, highly regarded matrimonial lawyer with offices in New York City and Westchester County. On June 2,1977 Jacobson, the claimant in this small claims action, consulted the defendant regarding a lawsuit instituted against him by his ex-wife. The defendant received $100 for this preliminary consultation. Four days later Jacobson returned to the defendant’s office, executed a retainer agreement, and gave the defendant a check for $2,500. The agreement provided in pertinent part as follows:
“Dear Ms. Sassower:
“I hereby retain and authorize you and your associated counsel to act as my attorneys in the prosecution and adjustment of claims arising out of my marital difficulties. With respect to your fees, it is not possible at the present time to estimate the length and nature of the services which you will be required to render on my behalf. We have, therefore, arrived at the following agreement:
“1. You are to receive a fee for your services based on your standard hourly rate of $100 per hour, to be paid as *280 billed. The ultimate fee may also reflect the complexity of the case, the result obtained, and such other factors as may be relevant.
“2.1 hereby agree to a non-refundable retainer of $2,500 (which is not to be affected by any possible reconciliation between myself and my wife). Said retainer is to be credited against your charges (receipt of $2,500 being hereby acknowledged).”
The contract was printed on the letterhead of a White Plains law firm with which the defendant was associated at that time.
The defendant referred Jacobson to two of the partners in the firm for separate consultations, apparently intending that one or both of them would represent Jacobson at trial. Several weeks before the trial date, the defendant and the firm parted ways, and the defendant established her own law office. She informed Jacobson that she would assign another attorney to his case, because she had plans to attend an American Bar Association convention that was scheduled for the week of Jacobson’s trial. Jacobson vehemently objected to the proposed arrangement, demanding that the defendant obtain a postponement and personally represent him at the trial. The defendant eventually agreed, but by this time the relationship had become strained. Jacobson discharged the defendant by letter dated July 26, 1977, and engaged substitute counsel to handle his case. Jacobson now seeks to recover $1,500 in unearned fees from the defendant.
In every retainer agreement for the performance of specific legal services, there is an implied condition that the client may at any time and without explanation dismiss his attorney. (.Martin v Camp, 219 NY 170.) It is well established that a discharged attorney’s claim for fees is limited to the reasonable value of services actually rendered. (Martin v Camp, supra; Handelman v Olen, 11 AD2d 987, affd 11 NY2d 896.) However, whether a client is entitled to recover all or part of a fee already paid to an attorney is a separate question, and the two courts in this State that have addressed the issue have reached conflicting conclusions.
*281 In Jackson v Baltimore (202 Misc 209, 210 [App Term, 2d Dept]), the court held: “[W]here an attorney is discharged by his client without cause after he has been paid a sum on account of his fee and disbursements, he may retain only an amount representing the reasonable value of the services actually rendered to the date of his discharge plus his disbursements. His measure of recovery is no different where he has already been paid in part or in whole for his future services than it is where he has received no such payment. In either case the measure of his recovery is based on the principle of quantum meruit.”
Six months later, a case came before the Appellate Term, First Department, in which a client had paid an entire fixed fee in advance and then decided not to proceed with the action. The court stated: “The defendant’s employment having been terminated without fault on his part, whether the plaintiff is entitled to the return of any part of the fee paid for the conduct of the action to its conclusion, depends on the intention of the parties when the payment was made, to be determined from the receipt and all the surrounding circumstances.” (Fellner v Zuckerberg, 202 Misc 611, 612 [App Term, 1st Dept].)[1]
This is the first time since Fellner (supra) that a court has been called upon to decide the issue of whether a discharged attorney must refund the unearned portion of a nonrefundable advance retainer fee.
Arguably, application of Fellner (supra) might be confined to cases involving advance payment in full of a fee that the parties here fixed as compensation “for the conduct of the action to its conclusion”. But this would be a distinction without a difference. Whether the attorney has been paid in full or in part, or whether the fee is comprehensive or based upon an hourly rate, the client is still in the position of having paid for services that will not be rendered.
*282 In my opinion, the practice of charging advance “nonrefundable” fees is a bald attempt to circumvent the rule limiting an attorney’s recovery upon discharge to quantum meruit (Martin v Camp, supra). At the core of the rule is a strong public policy favoring the maintenance of a client’s absolute trust and confidence in his attorney, and the promotion of public confidence in the legal profession. (.Martin v Camp, supra.) Where a client faces the prospect of paying twice for legal services, he may be compelled to keep an attorney in whom he has lost faith.
Permitting the client to recover the excess of fees paid over the reasonable value of the services rendered will prevent the client from being penalized for exercising his right to discharge (supra, p 174) his attorney regardless of cause. As was stated in Martin v Camp (supra, p 174) “If the client has the right to terminate the relationship of attorney and client * * * it follows as a corollary that the client cannot be compelled to pay damages for exercising a right which is an implied condition of the contract.”
The defendant contends that advance payment of nonrefundable legal fees demonstrates the client’s “seriousness of purpose” in retaining a particular attorney to proceed with a contemplated action. It is her theory that the nonrefundability of the fee serves to discourage the practice of systematically hiring and discharging lawyers in order to deprive adversary parties of the attorney of their choice.
This argument is not only specious, but is also devoid of any relevance to the facts of this case. Jacobson engaged in no scheme to restrict his ex-wife’s access to legal counsel; he merely was dissatisfied with the services furnished by the defendant. In any event, the defendant’s own practice of offering preliminary consultations belies the validity of her argument. Presumably a party could accomplish the intended result without actually retaining any attorneys, and without paying more than initial consultation fees. And, that the defendant incidentally may have been deprived of the theoretical opportunity to represent Jacobson’s adversary would be an insubstantial reason for permitting her to keep the full retainer fee.
*283 A retainer fee ordinarily constitutes a payment in advance to cover future services in connection with a specific legal matter until further provision is made. (Severance v Bizallion, 67 Misc 2d 103 [App Term, 1st Dept].) This is commonly known as a “special retainer”. While its acceptance obligates the attorney to refuse adversary employment,[2] that is not its intention. On the other hand, payment of a preliminary fee may be made solely to receive whatever professional services a client may request during a fixed period. This is called a “true”, or “general retainer”, and is intended to remunerate the attorney for being deprived of the opportunity to act for another. (Severance v Bizallion, supra; 1 Speiser, Attorneys’ Fees, § 1:4; L’Estrange and Turner, Fee Agreements, 27 Practical Lawyer [No. 3], 11.)[3] When an attorney hired pursuant to a general retainer is discharged without cause the client is liable for the entire contract price. (Greenberg v Remick & Co., 230 NY 70.)
Nothing in this agreement indicates that the parties intended a general retainer. The first paragraph provides for an hourly fee, and the second paragraph states that accumulating charges are to be offset against the $2,500 advance payment. Moreover, it is uncontested that the defendant was employed to represent Jacobson for a period of unspecified duration in connection with a particular legal matter.
The defendant’s contention that provision for nonrefundability of advance fees furnishes assurance of the client’s commitment to his own cause is similarly without merit. I fail to see why a client should have to assume the risk of forfeiture as proof to the attorney that he is sincere about asserting a legitimate claim or defense. Surely a client who has been named as a party defendant in a contested matter, as is the case here, has little choice but to proceed with his defenses and counterclaims. There is absolutely no *284 question about Jacobson’s sincerity in retaining the defendant. The point here is that Jacobson felt the need to terminate their relationship. He should not be penalized for doing so.
It is significant that retention of the retainer fee by the defendant would violate an important ethical duty owed by lawyers to their clients. DR 2-110 (B) of the ABA Mode Code of Professional Responsibility states that a lawyer “shall withdraw from employment if * * * (4) he is discharged by his client.” DR 2-110 (A) of the ABA Mode Code of Professional Responsibility provides that “(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.” Thus, it appears that the attorney’s obligation to her client upon withdrawal from the case is not altered by the circumstances of who terminates the relationship.
Section 474 of the Judiciary Law provides “The compensation of an attorney or counsellor for his services is governed by agreement, express or implied, which is not restrained by law”. However, retainer contracts, as a matter of public policy, are of special concern to the courts. They are not always enforceable in the same manner as ordinary commercial contracts. (Matter of Schanzer, 7 AD2d 275, affd 8 NY2d 972.) Although attorney and client are presumed to possess equal bargaining power when entering into the initial contract of employment (Clifford v Braun, 71 App Div 432), the agreement will not be enforced if it is unconscionable or illegal. (Rodkinson v Haecker, 248 NY 480.)
The defendant testified that this retainer agreement is commonly used throughout the New York City metropolitan area. The court takes notice that substantially similar, albeit more specific, agreements are reproduced in lawyers’ handbooks and study aids. (See, e.g., 1979 PLI New York Matrimonial Practice, pp 197-198; L’Estrange and Turner, Fee Agreements, 27 Practical Lawyer [No. 3], 11, 23-25.) These agreements are not unconscionable, for it is perfectly permissible for attorneys to charge reasonable minimum or single comprehensive fees. If the services of the attorney are continued to completion, the client has no claim to a refund. However, once the client has elected to *285 terminate the relationship, it is the duty of the attorney to refund fees paid for services that can no longer be performed. (See L’Estrange and Turner, Fee Agreements, 27 Practical Lawyer [No. 3], 11.)
Application of an “intention of the parties” test (as set forth in Fellner v Zuckerberg, supra) to the circumstances presented here would not change the result. A retainer agreement will not be enforced in the absence of proof that it was fully comprehended by the client. (Ransom v Cutting, 112 App Div 150, affd 188 NY 447; Cohen v Ryan, 34 AD2d 789.)
Jacobson testified that he read the contract quickly, if at all, and that he did not receive a full explanation of its terms. He assumed that the $2,500 was a deposit, intended as security for payment. The defendant does not claim to have explained the contract to her former client. Rather, she contends that the plaintiff is bound by the express terms of the agreement. According to her, the $2,500 was her minimum fee for taking the case, and paragraph two makes this clear.
Unlike the model retainer agreements set out in the PLI manual and L’Estrange and Turner, Fee Agreements (27 Practical Lawyer [No. 3], 11) this contract contains no explicit language designating the $2,500 as a “minimum fee”. In addition, the first numbered paragraph provides that the attorney is to receive a specified hourly rate for her services. I do not believe that the average matrimonial client would understand, without elaboration, that he was agreeing to a possible forfeiture of his advance payment in the unlikely event that he discharged the defendant. Certainly, the minimum which should be required of a lawyer, with respect to her client, is that she make clear the precise nature of the charges to be imposed. (Cf. ABA Model Code of Professional Responsibility, EC 2-19.)
Fee disputes between attorney and client are particularly prevalent these days, especially in the area of family law. (Fee Dispute Arbitration Catches On, National LJ, Feb. 1, 1982, p 1.) “ ‘When a party seeks legal help in these matters, they are often very, very emotionally involved * * * The client may be much more interested in a *286 child or the bank account than lawyer fees. In many cases, the attorney has adequately set out the fee but the client was not in a position to hear.’ ” (Id., p 17 [quoting Robert C. Hultquist, chairman of a Chicago Bar Assn committee that oversees fee dispute arbitration].) It is specially incumbent upon the matrimonial lawyer to make certain that the fee arrangement is one that has been fully comprehended and assented to by the client. (Cf. Reisch & Klar v Sadofsky, 78 AD2d 517.) This the defendant did not do.
Finally, the defendant argues that she relied on the nonrefundability of Jacobson’s fee, among others, in employing associate counsel to help handle the cases which she brought with her when she severed her relationship with the law firm in White Plains. Had the associates actually assisted the defendant in preparing Jacobson’s case, the time spent by the associate would be entitled to consideration in determining the reasonable value of services rendered by the defendant. However, Jacobson specifically declined to accept the associate’s services, and no such services were performed.
The defendant has shown that she spent a maximum of 10 hours working on Jacobson’s case. The terms of a retainer agreement providing for compensation at a fixed rate may be taken into consideration in fixing the value of an attorney’s services. (Matter of Montgomery, 272 NY 323; Paulsen v Halpin, 74 AD2d 990; Sassower v Barone, 85 AD2d 81.)
I find a fair and reasonable fee to be $1,000. Jacobson who paid $2,500 is entitled to a refund of $1,500. Judgment for claimant for $1,500.

. Although it appears that Fellner is regarded as the prevailing rule (see, e.g., Gross v Russo, 47 AD2d 655; Leibowitz v Szoverffy, 97 Misc 2d 854), it is Jackson, rather than Fellner, that is cited in the American Law Reports as stating the New York rule. (See Ann., 54 ALR2d 604, 619.)

. See n 3, infra.

. Of particular interest is the following statement in the L’Estrange article (Fee Agreements, 27 Practical Lawyer [No. 3], 11, 23): “The type of retainer received from a client should be specifically identified in the fee agreement, because the unearned portion of an advance on fees is refundable to the client upon the withdrawal or termination of the attorney, but a true retainer is not.” Apparently, this is the prevailing rule in California if not elsewhere.