■ ALBERT E. JOLIS, Respondent-Appellant, v EVA O. JOLIS, Appellant-Respondent. — Judgment, Supreme Court, New York County (Leonard N. Cohen, J.), entered January 27, 1982, which granted maintenance and an equitable distribution of property on a previously granted divorce, affirmed, without costs. The facts are set forth in detail in the trial court's careful and comprehensive opinion (111 Misc 2d 965) and need not be restated. Upon the parties' cross appeals from the judgment entered we affirm essentially for the reasons stated in that opinion, but with the following additional comments. One of the issues presented required construction of section 236 (part B, subd 1, par d, cl [3]) of the Domestic Relations Law, which included in the definition of separate property "the increase in value of separate property, except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse". Trial Term found it significant (p 979) that this clause does not contain specific language requiring the court to consider a spouse's " 'contributions and services * * * as a spouse, parent, wage earner and homemaker, * * * to the career or career potential of the other party' ", which are prescribed as relevant factors in determining the equitable distribution of marital property (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]) and the amount and duration of maintenance (§ 236, part B, subd 6, par a, cl [8]). From this the court concluded (111 Misc 2d, at p 979): "It would appear therefore that the Legislature intended a construction of the meaning of a spouse's 'contribution of efforts' toward the appreciated value of 'separate property' to exclude considerations of services as a spouse, parent, wage earner, homemaker or other spousal career advancement factors." We agree that the omission of the quoted language from section 236 (part B, subd 1, par d, cl [3]) is relevant to the construction of the section. However, we decline to foreclose the possibility that other cases may disclose circumstances in which services as a spouse, parent, wage earner, or homemaker in fact contributed to the appreciation of the other spouse's separate property, circumstances not presented in the instant case. Another issue meriting comment arises from Trial Term's observation that a certain parcel of undeveloped realty in Arizona, valued at $70,000, was "excludable from marital property as a gift to a third party." (111

Misc 2d, at p 973.) It appears from a study of the record, that the husband had loaned the down payment for the property to a woman whom he thereafter married, and he made the initial mortgage payments. The funds so advanced were listed by the husband as a receivable in the amount of $30,916 in his statement of net worth; that amount was conceded by the husband to be marital property, and it was appropriately included in the equitable distribution of marital assets by the court. Accordingly this case does not present the question whether, and under what circumstances, one spouse may exclude assets from marital property, to the detriment of the other spouse, by a gift to a third party. Responding briefly to certain observations in the dissenting memorandum, we perceive no inconsistency between the trial court's evaluation of the wife's services as homemaker, spouse, mother and manager of the household in determining her right to a portion of the marital assets as well as to maintenance, and the trial court's conclusion that these services had not contributed to the appreciation of her husband's separate property. Omitted from the dissenting memorandum, but surely significant on this issue, is the striking circumstance that the major increase in the value of the husband's Diamond Distributors, Inc. (DDI) stock occurred between December 31, 1977 and December 31, 1979, several years after the effective breakup of the marriage. As to the wife's possible entitlement to any part of this increase in value, the record fully supports the trial court's findings of fact and the conclusion of law specifically addressed to this issue: "the DDI stock profits and resulting increased value during marriage were attributable to market factors and to the husband, his father, uncle and others in the worldwide management of DDI as well as the husband's own personal premarital and marital social and business associations and relationships and those of his family. In fact, it appears that greatest increase in profits which occurred in recent years resulted from the 'diamond fever' of the marketplace, something beyond even the control of DDI. Some of the indirect alleged services testified to by the wife were postseparation and subsequent to her knowledge of the husband's living with another woman and hardly can be characterized as efforts which contributed to increased DDI profits. Some of her activities interfered with her husband's business and social relationships, rather than being supportive during this postseparation period. Although the wife undoubtedly maintained warm friendships with some of her husband's social and business friends and spouses, the extent to which such relationships resulted in increased DDI profits is purely speculative. The value of his stock increased or declined due to management and market factors. The wife could not correlate how and in what manner her indirect spousal efforts or services led to the appreciation in the value of DDI stock during marriage. Accordingly, the court finds the wife is not entitled to a distribution of the appreciated value of her husband's separate property of DDI stock." (111 Misc 2d 965, 980.) As to the observation in the dissenting memorandum that distribution of retained earnings is "normally the case" and a "customary business practice" in closely held corporations, the record and common business experience simply do not support the assertion. What the record did establish, without contradiction, is that DDI had never paid a dividend, a policy predating not only the parties' marital problems, but predating the marriage itself. It was also undisputed that DDI needed the accumulated surplus to provide working capital for daily operations, including maintenance of a $12,000,000 diamond inventory, and to comply with banking agreement requirements. DDI's books had been examined annually by Internal Revenue agents, and these audits had never resulted in a finding that DDI's retained earnings account was excessive, a finding which would have resulted in a substantial tax penalty to DDI. Accordingly, the record provides no basis whatever for the suggestion that DDI's retained earnings should

somehow inure to the financial benefit of the wife. Finally, regarding the dissenter's suggestion that the Avenue Foch co-op should be given entirely to the wife, we perceive no persuasive reason why it would make sense for her to continue to live indefinitely in a very large apartment, generating over $43,000 in yearly expenses, and which formerly housed a husband, a wife, and four children who are now emancipated and self-supporting. We agree with the trial court's observation (111 Misc 2d, at p 976) that the co-op, if not sold and the proceeds distributed, "will continue to be a bone of contention between the parties because of the heavy cost of upkeep and the husband's deprivation of his portion of the net sales proceeds to which he would be entitled as a marital distribution." We further observe that awarding the wife sole possession of the Avenue Foch co-op would not only be unwarranted, but would materially upset the delicate equitable distribution of assets meticulously worked out by the trial court. Concur — Sandler, J. P., Asch, Silverman and Bloom, JJ.

Kassal, J., dissents in part in a memorandum as follows: The parties were married in 1939. At that time, the wife was a successful singer and actress, earning more than $500 per week, which enabled her also to support her handicapped sister and two brothers. At the husband's insistence, she gave up her promising career to become a full-time wife, homemaker and eventually, mother of four sons. At the time the couple married, the husband's income was only $50 per week, which he received from a family corporation formed in 1938. They lived together until late 1972 or 1973, when the husband left to move in with his then paramour, now his wife. The parties had been married for 41 years at the time the case came on for trial in 1980. During the marriage, the husband concentrated on the family business, achieving extraordinary financial success. The wife's contributions were also exceptional, although noneconomic in nature. After a lengthy trial, in a very comprehensive and painstaking opinion, the trial court concluded: "the wife's contributions and services are considered and they were substantial as a homemaker, spouse, mother of four sons, and manager of the households, both here and abroad. Her faithful devotion, her social companionship, intelligence, charm, friendships with the wives of his business contacts and linguistic fluency were all of importance to the husband in his worldwide social circles and in his career. (Domestic Relations Law, § 236, part B, subd 6, par a, cl [8].) This marriage was one in which the woman relinquished a budding career, to raise a family and to be totally supported and dependent upon her husband in accordance with his wishes." (111 Misc 2d 965, 990.) I fully agree. However, where appropriate, the wife's contributions and services should be considered, not only with respect to marital assets, but also with regard to separate property. On that basis, I find that, by reason of her indirect contributions to the increase in his separate property, the wife should receive the full ownership of the parties' residence at Avenue Foch in Paris, where she has been living for some time. As to the background, the wife did play a role in assisting the husband to increase his stock interest in Diamond Distributors, Inc. (D.D.I.), a family-owned business which had been formed one year before the marriage. This stock interest is by far the largest asset in his estate, concededly separate property, which the trial court declined to consider or otherwise make provision for in its plan for equitable distribution. The most significant element in valuing plaintiff's stock interest in D.D.I. is corporate retained earnings which, in a relatively short period from December, 1977 to September, 1980, increased plaintiff's stock equity from $2,261,056 to $3,273,242. The trial court termed defendant's contributions as "primarily indirect and speculative". (111 Misc 2d, at p 979.) It was held that the increase in value was attributable to market factors, the worldwide management of D.D.I., the personal, social and business associations and relationships of the husband

and his family and " 'diamond fever' ". (111 Misc 2d, at p 980.) I recognize that there exist significant valid reasons which militate against any distribution by the corporation of retained earnings, including, *inter alia,* any outstanding stockholder agreement, the contractual rights of lenders, and resultant tax consequences of any such distribution. Nevertheless, the fact that retained earnings were accumulated during the term of the marriage, during which time the wife made significant indirect contributions to such increased valuation, cannot be wholly ignored. Obviously, if such sums had not been retained but, instead, had been paid out as earnings, as is normally the case, the net after-tax amount received by the husband as a stockholder would have added substantially to their marital estate and would have been a proper subject for distribution. Thus, although distribution of retained earnings cannot be compelled, it does appear inequitable to disregard the fact, that, if this corporation had adhered to customary business practice in regard to the payment of earnings as salary or dividends, undoubtedly the husband's income and his estate would have been greater, thereby entitling the wife to participation therein as part of the equitable distribution of marital assets. The trial court, in formulating a plan of equitable distribution divided the marital property, which in great measure was comprised of real estate. The husband received several real estate properties, including an apartment in New York City, a studio apartment in Paris, and a farm, Green Meadow, in Dutchess County, New York. The court granted to the wife, for a three-year period, exclusive personal use and occupancy of the Avenue Foch co-operative apartment in Paris, where defendant currently resides and which was the primary marital home of the family for over 25 years. Thereafter, the apartment was to be treated as marital property and sold, with the proceeds divided on the basis of a formula of 55% to the husband and 45% to the wife. In my view, this is unfair. Under the circumstances of this case, the wife should not be forced to vacate her home and submit to mandatory sale of the apartment. The entire ownership should be conveyed immediately to defendant for her sole use, occupancy and disposition, in recognition of the various other residences owned by the parties which now remain with plaintiff and as appropriate compensation for her indirect contributions to the increase in his stock in D.D.I. In so concluding, I have taken into account the statutory factors to be considered in determining an equitable distribution of marital property under section 236 (part B, subd 5, par d, cls [1]-[10]) of the Domestic Relations Law and, in particular, subdivision 5 (par d, cl [6]), which directs the court to take into consideration "any equitable claim to, interest in, or direct or *indirect contribution* made to the acquisition of such marital property by the party not having title, including joint efforts or expenditures and *contributions and services as a spouse, parent, wage earner and homemaker,* and to the career or career potential of the other party". (Emphasis added.) I disagree with the determination of the majority, which has approved the finding by the Trial Justice that the omission of similar language in section 236 (part B, subd 1, par d, cl [3]), defining "separate property" precludes consideration of the spouse's "contributions and services as a spouse, parent, wage earner and homemaker, and to the career or career potential of the other party". I do not believe that the omission of such language in subdivision 1 (par d, cl [3]) leads to that determination. To the contrary, the statute in clause (3) of paragraph d of that subdivision defines "separate property" as "property acquired in exchange for or the increase in value of separate property, *except to the extent that such appreciation is due in part to the contributions or efforts of the other spouse".* (Emphasis added.) Essentially, the majority recognizes that there is discretion to take into account the spousal contributions to separate property, but finds this to be an inappropriate case for such consideration. I disagree. This is a

case which poses proper circumstances for the exercise of discretion since the wife's contributions to the husband's separate property were substantial. I base my conclusion upon the very factors outlined by the trial court in determining the wife's maintenance award (111 Misc 2d, at p 990). It is illogical and inconsistent, on the one hand, to describe a wife's contributions to her family's well-being in such strong and unequivocal terms when making an award of maintenance and, on the other hand, to characterize the very same sterling qualities as having an "indirect and speculative" effect on the increase in value of the corporate stock. I find it difficult to reconcile the court's conclusion that the wife was a devoted homemaker, thereby enabling the husband to concentrate on amassing a large separate estate, with the ultimate determination that, in regard to his separate property, these same factors should be totally ignored as an equitable consideration under section 236 (part B, subd 1, par d, cl [3]). While it is true that the wife, now 67 years of age, is not infirm, it would be unfair in three years to compel her, then a 70-year-old woman, to seek another home after having lived in the same apartment for more than 25 years of the 41-year marriage. Absent the most compelling financial or other similar circumstances on the part of the husband — which have not been demonstrated or even claimed — such a directive would be inequitable. I reach this determination with full awareness of the fact that, upon the husband's demise, the award of maintenance will terminate and that the wife, at that time, will be entitled to certain other lesser benefits, in the form of insurance, certain stock benefits, a share in his pension and profit-sharing plans. Nevertheless, by a direction granting to the wife exclusive ownership of the Avenue Foch apartment, she would receive some additional assurance that she will be financially functional and be able to solve partially the several inevitable problems which she faces in the future. In fairness to both parties and under the circumstances of this case, I would modify the judgment to the extent of directing that the Avenue Foch apartment be immediately conveyed to the wife as her sole and exclusive property in consideration of the various statutory factors enumerated and, except, as so modified, the judgment should be affirmed.