MARIO SEMENTILLI, Appellant, v LUCIA SEMENTILLI, Respondent.

First Department, May 31, 1984

APPEARANCES OF COUNSEL

*Donna Alleva* of counsel (*A. Charles D'Agostino,* attorney), for appellant.

*Jesse Rothman* for respondent.

## OPINION OF THE COURT

FEIN, J.

Plaintiff husband appeals from a judgment, Supreme Court, Bronx County (Alfred Callahan, J.), entered April 27, 1983 which dismissed his cause of action for divorce on the ground of abandonment; granted defendant wife judgment of divorce on ground of cruel and inhuman treatment; awarded the wife $80 per week for child support for the three infant issue of the marriage pursuant to a prior Bronx County Family Court order; awarded an additional $25 per week as maintenance to the wife until the youngest child attained 21, graduated college or was emancipated, whichever occurred first; awarded the wife a money judgment of $8,610 for arrears of child support under the Family Court order and further directed that $9,570 for arrears in child support up to the date of the judgment (inclusive of the $8,610) be deducted from the proceeds realized by the husband from his share of the marital

property; determined the husband owned an unimproved parcel of land in Italy as his separate property; directed that a house and property also located in Italy (title to which was in the husband's name) be placed for sale as marital property and the net proceeds equally divided, unless either party desired to purchase it for a fair and reasonable appraisal price; directed that five parcels of unimproved real property in New York State and one parcel in Quebec, Canada, having a total appraised value of $31,000, be sold, and the proceeds equally divided unless either party tendered $15,500 to the other; awarded the wife exclusive possession of a house purchased by her in The Bronx until the youngest child attained 21, completed his education or was emancipated, whichever occurred first, whereupon the parties were to endeavor to have one purchase the property from the other, failing which the property was to be sold, the husband to receive 50% of the proceeds, less upkeep incurred by the wife since July, 1980, the husband also to be entitled to one half the net proceeds of the rent from July 28, 1980 through April 6, 1983; decreed that a bank account in the name of the husband in the sum of $300 be deemed marital property, to be equally divided; and awarded the wife $1,500 counsel fees.

Although no notice of cross appeal appears to have been filed, the wife purports to appeal from that part of the judgment which denied her claim to any part of plaintiff's pension rights because of the failure to have the property evaluated.

We agree that the wife is entitled to a divorce but we disagree with the equitable distribution aspects of the award.

The husband, age 59 at the time of trial, first came to the United States in 1954. He became a member of the Excavators Union in 1957. In February, 1962, while he was in Italy for approximately eight months, he married defendant. They moved into a four-room house he owned in Italy. The record is not clear whether the house was already fully built or was still incomplete. Doors, a new roof and a back house were added thereafter. The husband did some of the work and paid for the rest. Prior to the marriage the husband acquired an additional plot of land

adjoining the property on which the house stood, with his own funds and in his own name. The parties' first child was born in December, 1962 in Italy. At the time of the child's birth, the husband had already returned to America. Over the next nine years, the husband made three trips to Italy for periods totaling two years. During those years, the parties had three more children, all born in Italy, twins born in October, 1964 and a son born in July, 1968. The wife maintained the house and cared for the children with some assistance from her parents and his parents during those nine years. She cared for the animals, grew crops, and worked as a seamstress and supported herself and the children with limited assistance sent by her husband from America.

Upon the insistence of the wife, the husband, by then an American citizen, brought his wife and four children to New York in December, 1971. The family took up residence in a small Bronx apartment which the husband had rented.

Within two months of her arrival, the wife began to work as a seamstress, in a factory and at home. She maintained this occupation almost continuously from then until the time of trial, earning between $140 and $150 per week. She also maintained the household. The husband was then earning approximately $300 per week. He paid the rent for the apartment, and for a subsequent apartment to which the family moved, at the rate of $120 per month, as well as gas, electric and telephone bills. He made mortgage payments of approximately $140 per month on the parcels of unimproved land which he purchased. The income tax returns of the parties indicate a range of income for the family from $7,000 in 1970 to $21,000 in 1974. The extent to which the husband and the wife each provided funds for food, clothing, etc., is unclear from the record.

In 1972, the husband utilized his own funds to purchase two lots in Sullivan County, New York, and one lot in Quebec, Canada, all taken in the joint names of husband and wife. The Sullivan County properties were subject to mortgages of $5,000 and $6,000, respectively. The husband testified that they were paid off and that he had also paid $400 down on each purchase. The Quebec deed indicates a

purchase price of $5,060. In 1977, the husband purchased two lots in Suffolk County. Title to one of them was taken as tenants by the entirety, the other in the husband's name. These five lots and another in the husband's name were appraised after trial but before judgment at $31,000.

The wife repeatedly urged the husband to purchase a house for the family to live in in The Bronx. He continually refused. In June, 1980, the wife, utilizing funds she had saved from her own work, funds from her children's jobs and $1,500 which her father sent from Italy, bought a two-family house in The Bronx, solely in her own name, putting down $8,000 and obtaining a $30,000 mortgage, leaving her with no savings. She did not advise the husband of the purchase until June 28, 1980 when she moved most of the possessions out of the parties' apartment while he was at work. When he returned home from work that evening, she made his dinner and then told him that she and the children were moving. She asked him to join them, but he refused. Two days later she went to the Family Court to seek an order of child support, ultimately obtained. Between that time and the time of the trial, the husband never sought out his children. He spoke to them only occasionally, when he met them on the street. He made no child support payments of $80 per week pursuant to the Family Court order which directed such payment, so at the time of trial there were arrears of $8,610.

The husband commenced this action for divorce on the ground of abandonment in July, 1981. The wife's original answer and counterclaim asserted that the husband had refused to accompany the wife to the new home, and asserted a cause of action for separation on the ground of cruel and inhuman treatment. The wife's amended answer and counterclaim requested a divorce upon the ground of cruelty.

The evidence was sufficient to sustain the Trial Justice's finding that the wife was entitled to a divorce from the husband upon the ground of cruel and inhuman treatment, and to deny the husband's claim for a divorce on the ground of abandonment. The wife was given sole custody of the one child under the age of 18, which is not contested. The court awarded $80 per week child support on the basis of the

prior Family Court award, plus an additional $25 per week for the maintenance of the wife, until the youngest child was emancipated, completed his education or became 21, whichever occurred first. The court also directed that the child support arrears be deducted from the proceeds received by the husband from his share of marital property and that a judgment for the arrears be entered against him as well.

The court then found that the unimproved parcel of land in Italy, owned by the husband prior to the marriage, was separate property and not subject to equitable distribution. All other real property, including the land and house in Italy in which the wife and children had lived for the first nine years of the marriage, and the house in The Bronx purchased by the wife and six parcels of unimproved real property purchased by the husband, were found to be marital property. The court directed that all such property be sold and the proceeds divided equally unless one party paid the other one half the value. However, the wife was given exclusive possession of the house in The Bronx which she had purchased, until the youngest child reached 21 years of age, was emancipated, or completed his education, whichever occurred first.

The court awarded the wife $1,500 counsel fees, $1,000 to reimburse the amount she had advanced and $500 to the attorney. The court also directed that the husband's bank account in the sum of $300 be deemed marital property, one half of which ($150) was to be paid to the wife.

■ The husband's challenge of the $80 per week child support award, because the court did not conduct any inquiry as to the circumstances, means and resources or the needs of the parties and children, is without merit. It was proper for the court to rely upon the prior Family Court award. Moreover, the record sufficiently supports the sum of $80 per week for support of the four children, all of whom were under the age of 21. The financial circumstances and needs of the parties and the children were sufficiently set forth on the trial (Domestic Relations Law, § 236, part B, subd 7, par b). There is no evidence that the Family Court award was ever reduced or otherwise modified. Nor is there any evidence that the husband was

unable to afford the support payments directed by the Family Court.

It is undisputed that the husband's earnings as an excavator were substantially higher than those of the wife who worked as a seamstress. The court was not required to await further determinations or enforcement proceedings in the Family Court.

The court properly awarded $25 per week maintenance, to continue until the youngest son becomes 21, the purpose being to help maintain the home as long as there were children under the age of 21.

We reject the husband's contention that the Supreme Court could not make an award covering arrears of child support payments premised upon the Family Court order. The Supreme Court has concurrent jurisdiction over any matter within the jurisdiction of the Family Court (*Kagen v Kagen,* 21 NY2d 532). The court could have removed the Family Court proceeding to the Supreme Court and consolidated it with the divorce action (*Hessen v Hessen,* 37 AD2d 778). It could have done so *nunc pro tunc.* Although the Family Court may be the preferred forum for child support matters (see *Kagen v Kagen, supra,* p 538), here, where the record established substantial arrears and the Supreme Court is entertaining an action involving disposition of all of the parties' assets, a comprehensive arrangement covering the arrears is appropriate. It is not denied that the husband has never made any payments for child support under the Family Court order or otherwise. All of the relevant financial affairs of the parties were before the court, including the fact that the four children reside with the wife in the house she maintains. The wife's counterclaim alleged that the husband failed to make any child support payments as ordered by the Family Court. The amended counterclaim sought concurrent jurisdiction with the Family Court in determining all issues of child support. The records of the Family Court respecting the arrears were before the trial court. The father and mother are equally responsible for the support of their children. It is within the power and duty of the court to apportion such responsibility between them in accordance with their respective means and responsibilities (Family Ct Act, § 413;

*Matter of Miller v Miller,* 61 AD2d 774; *Matter of Carter v Carter,* 58 AD2d 438; *Tessler v Siegel,* 59 AD2d 846). The trial court appears to have based its determination as to child support and arrears on this foundation.

■ The undisputed arrears of $8,610 in child support constituted a debt owed by the husband to the wife. It is appropriate that in effecting an equitable distribution of the property of the parties, provision be made for payment of such debt. However, there was no authority for directing entry of judgment against the husband for the arrears. The exclusive remedy for obtaining such a judgment is a formal application pursuant to section 244 of the Domestic Relations Law (*Kahn v Sampson,* 23 AD2d 539; *St. Germain v St. Germain,* 25 AD2d 568). Moreover, the money judgment portion of the decree is duplicative since the judgment also directs that the arrears be deducted from proceeds realized by the husband from his share of the marital property. Provision for a separate judgment for arrears is not only unauthorized, it is unnecessary.

Thus, the judgment contains decretal paragraphs which appear to be inconsistent and duplicative. The wife is entitled to payment by the husband of the sum of $9,570 for arrears to the date of judgment. Since provision is made for distribution between the parties which will result in payment to the wife to cover the arrearages out of the husband's share of the marital property, paragraphs fifth and sixth of the decree are inconsistent in that the husband became chargeable with the $9,570 twice.

The dissent proposes to vacate the provision requiring the husband to pay arrears of child support, upon the apparent ground that the husband's failure to comply with a Family Court order directing child support somehow increased his assets available for equitable distribution. Aside from the fact that there is not a shred of evidence to support the dissent's assumption, it is plain that any such conclusion would provide an incentive for a husband to disregard his court-ordered obligation to support his children in whole or in part, secure in the knowledge that he will never have an obligation to pay such arrears in the event of an equitable distribution. Such an approach substitutes an unfounded mathematical formulation in place

of an equitable distribution. Whatever may be the merits of a mechanical application of mathematical formulae to some aspects of equitable distribution, it has no application here.

There is simply no legal or factual basis for concluding that had the husband complied with his court-ordered obligation, his property would somehow have been *pro tanto* reduced so that a different distribution would be required. Plainly, the husband owed a debt to the wife. The wife provided that portion of the support which the husband was obligated to furnish. It would do violence to the concept of equitable distribution to require a discharge of the husband's debt at the expense of the wife. There is no showing what the husband did with the money he was ordered to pay for child support each week. Whether he dissipated it, or spent it for clothes, entertainment or whatever, nowhere appears. Moreover, the obligation for child support is a species of maintenance, not property distribution. The wife's share in the obligation to support the children, upon which the dissent relies, was necessarily recognized by the Family Court in making its award. There is no showing to the contrary.

If the dissent's formulation is to be relied upon, then in every case in which a temporary maintenance order is made against a husband for child support, wife support or both, the husband should withhold payment, confident that he will never be required to comply with the order. Equitable distribution intends no such result.

■ The Trial Justice recited the 10 statutory factors involved in equitable distribution pursuant to subdivision 5 of part B of section 236 of the Domestic Relations Law. However, it does not clearly appear how these factors were weighed in making the distribution. Remission for new findings on further consideration may be an appropriate remedy (*D'Amato v D'Amato,* 96 AD2d 849; *Nielsen v Nielsen,* 91 AD2d 1016; *Hanford v Hanford,* 91 AD2d 829). However, where, as here, the record reveals sufficient evidence to afford adequate review on appeal, the decision can be reviewed and modified by the Appellate Division (*Damiano v Damiano,* 94 AD2d 132; *Krivitzky v Krivitzky,* 94 AD2d 655; *Duffy v Duffy,* 94 AD2d 711; *Wilson v Wilson,*

101 AD2d 536). The record here is sufficient for such review. As stated by the Trial Judge, the factors which the court is mandated to consider are set forth in section 236 (part B, subd 5, par d) of the Domestic Relations Law as to equitable distribution of property, and in section 236 (part B, subd 6, par a) as to maintenance. The trial court seemed to act on the premise that equitable distribution means equal 50% to each party. This is not the intention of the statute (*Matter of Ward v Ward,* 94 AD2d 908).

In finding that the portion of the property in Italy in the husband's name, including the house in which the wife and children resided for the first nine years of the marriage, was marital property and the house in The Bronx, purchased by the wife, as well as all six of the parcels purchased by the husband during the marriage were marital property, and devising a method of partition and sale, the court seemed to be attempting to achieve a more or less precise, mathematical 50-50 division. It is plain that in most cases dealing with separate and marital property, no such division works an equitable result, not to speak of a fair disposition. While it is undoubtedly true that property acquired prior to the marriage is separate (Domestic Relations Law, § 236, part B, subd 1, par d, cl [1]), and therefore not subject to equitable distribution (see *Nehorayoff v Nehorayoff,* 108 Misc 2d 311, 314), under the facts of this case such an arbitrary determination does not result in an equitable distribution.

■ It is undisputed that at the time of the marriage the husband owned the house in Italy and the land on which it stood, as well as the adjoining parcel of unimproved property, acquired with his own funds. However, it appears that some improvements on the house were made after the marriage of the parties, and the work and the funds for the improvements were provided by the husband. It is also undisputed that during the nine years that the wife and children lived in the house while the husband resided in the United States, the wife maintained the house, worked as a seamstress and provided homemaker, child care and other spousal services. The separate unimproved parcel of property in Italy was plainly the separate property of the husband as the trial court recognized. To the extent that

the house in Italy and the land on which it stood were completed at the time of the marriage, this, too, was the separate property of the husband. Thus, the trial court erred in holding that the house and the property on which it stood in Italy were marital property subject to equitable distribution. However, the improvements made on the house after the marriage constituted marital property (Domestic Relations Law, § 236, part B, subd 5, par d, cl [6]; *Jolis v Jolis,* 98 AD2d 692).

As both the majority and the dissenter in *Jolis (supra)* recognize, property which began, as here, as separate property may increase in value during the marriage by reason of contributions made by either or both of the parties (Domestic Relations Law, § 236, part B, subd 1, par d, cl [3]). The problem is in recognizing, evaluating and giving effect to the different factors in determining an equitable distribution in such circumstances. Here, the husband furnished funds and labor after the marriage to improve the property during his sporadic visits. However, the wife provided nine years of homemaking and spousal services, as well as funds she earned, in maintaining the house and caring for the children, albeit she considered it the husband's property. *Jolis (supra)* and other cases demonstrates that in the effort to evaluate the contributions so as to provide an equitable distribution, the appropriate factors vary from case to case (*Duffy v Duffy, supra; Wood v Wood,* 119 Misc 2d 1076). No evaluation or appraisal of the Italian property appears in the record.

We disagree with the trial court's determination that the property was entirely marital property subject to equal division to be accomplished either by a sale or by having each party bid against the other for the other's half share. However, we recognize that a sale or evaluation of only the postmarital improvements is impractical, as is any attempt to value the services of the wife in maintaining the property and the family during those nine years. The wife apparently accepted this conclusion in her testimony to the effect that the house in Italy belonged to the husband, whether or not it be regarded as marital property in whole or in part.

The problem can best be solved here by also considering the house in The Bronx, purchased by the wife for $38,000, $8,000 down and $30,000 by way of a mortgage. Although it was purchased by the wife in her own name, a rigid application of the statute might require that it be held to be marital property because acquired during the marriage. This was the ruling of the Trial Judge. However, an examination of the consideration paid complicates the problem. The $8,000 in cash consisted of moneys the wife had saved from her own work, funds from her children's jobs and $1,500 her father sent from Italy. Obviously, the $1,500 was not marital property. The savings from the wife's earnings might be deemed marital property. Whether funds saved by the wife from the children's earnings are to be deemed marital property is unclear.

It does not appear that any of the funds which went into the purchase of the house in The Bronx came from the husband. Again, this is consistent with the testimony of the husband to the effect that the house belonged to the wife, albeit he claimed to have contributed indirectly upon the basis of the moneys furnished to the wife while they lived together. There is no appraisal in the record of the value of this house.

The trial court concluded that the house in The Bronx was marital property and directed that it be sold and the proceeds divided equally unless one party paid the other one half of the value. However, the wife was given exclusive possession of the house until the youngest child reached 21 years of age, was emancipated or completed his education, whichever occurred first.

Although the trial court's disposition is probably congruent with a literal reading of the statute and the cases, it needlessly complicates the disposition of the property, as the husband's brief acknowledges.

It is unnecessary to determine with precision the extent to which either the property in Italy or the property in The Bronx is marital or separate property. In our view each partakes of both. A delicate and meticulous distribution would serve no proper purpose. A fair and equitable disposition would be to direct that the property in Italy be deemed to be that of the husband in whose name it is held,

and that the property in The Bronx be deemed to be that of the wife in whose name it is held. The record indicates that each of the parties so considered the property. Only a mechanical application of the statutory factors would preclude such an equitable result.

There remains the question of the six parcels of property purchased by the husband. We agree with the trial court's conclusion that this property, all of which was purchased by the husband during the marriage, is marital property, to be divided equally, although four of the parcels are in the joint names, one in both names as tenants by the entirety, and one in the husband's name. Irrespective of these variations in title, equitable distribution requires that this property be divided equitably (Domestic Relations Law, § 236, part B, subd 1, pars c, d; subd 5).

The tenth decretal paragraph so directs. However, it should be amended to provide that the arrears of child support in the sum of $9,570 due from the husband should be deducted from his share of the proceeds and paid to the wife.

Although the wife purports to appeal from the trial court's failure to award her a portion of the husband's pension, there appears to be no notice of cross appeal. Moreover, there is no basis for such an appeal since no evaluation of the pension was submitted to the trial court (*Damiano v Damiano*, 94 AD2d 132, *supra; Majauskas v Majauskas*, 61 NY2d 481). The statute provides that one of the factors to be considered by the court is "the loss of inheritance and pension rights" (Domestic Relations Law, § 236, part B, subd 5, par d, cl [4]). However, there must be a basis for distribution in the record. So far as appears, the husband has pension rights accruing during his many years of work as an excavator. The record indicates that during some period of time prior to the dissolution of the marriage, the husband retired, and was receiving pension of some $230 per week. However, he returned to work, terminating, temporarily at least, his right to the pension.

There are at least two ways for distributing a pension (*Damiano v Damiano, supra*): one is to award a lump sum based upon present value, and the other is to award a share

of the pension benefits when due (see *Majauskas v Majauskas, supra*). Tax consequences are also to be considered. However, here no evidence was submitted to the trial court upon which to determine a distribution reflecting the husband's pension rights.

Even though no award is made to the wife out of the husband's pension, the result is not inequitable.

The parties to this long marriage clearly made relatively equal contributions. At the time of the divorce, they were relatively in the same economic situation, albeit the husband's earnings exceeded those of the wife. However, the respective potential would leave both parties relatively equal. The wife is plainly self-supporting.

■ The court's award of maintenance to the wife until the youngest child reaches the age of 21 or is emancipated, is appropriate. Maintenance for the wife beyond that date is not required in view of her demonstrated earning capacity, albeit she earns less than the husband.

The statute requires that consideration be given to the duration of the marriage and the health of the parties. This was a long marriage, albeit rather stormy. There were four children and a long legal relationship. Whether this was a strong or weak marriage, as discussed in some of the cases, need not detain us. The statute is concerned with financial matters, not emotional considerations. So far as appears, both parties are healthy and able to maintain their current working activities and earnings.

■ There is no reason why counsel fees should be awarded to the wife, since her funds and income are apparently adequate to pay for her own counsel, and the equitable distribution herein provided for will furnish sufficient funds (see *Williamson v Williamson,* 84 AD2d 606, mot for lv to app den 55 NY2d 604; *Hansen v Hansen,* 86 AD2d 859; *Kann v Kann,* 38 AD2d 545).

Accordingly, the judgment appealed from should be modified on the law and the facts to the extent of striking the fifth, sixth, eighth, eleventh and thirteenth decretal paragraphs and modifying the tenth decretal paragraph, and adding provisions awarding the husband exclusive title to all of the property in Italy, awarding the wife exclusive

title to The Bronx home in her name, awarding the wife and the husband each one-half interest in the value of the six parcels in the United States and Canada, and charging the husband with $9,570 in child support arrears, and the judgment should otherwise be affirmed, without costs, and the parties directed to settle an order in conformity herewith.

SILVERMAN, J. (dissenting in part). I would vacate the provision as to arrears of support *in toto,* both as a judgment and as a charge against the husband's share of property to be sold in the future.

Both husband and wife had an obligation to support the children. To the extent that the husband did not perform his obligation, the husband's assets presumably increased and the wife's decreased. But this increase or decrease coming after the marriage is in principle an increase or decrease of the marital property, which thus becomes subject to equitable distribution. When equitable distribution of the marital property is directed, it takes into account the husband's increased assets and the wife's decreased assets, and the "equitable distribution" of the marital property is based on the total marital property.

Conversely, if the husband had paid the child support, his assets would have decreased and the wife's increased, though the sum of the marital property would be the same, and in that situation, it could not be argued that the wife is entitled to the arrears again. By giving the wife both equitable distribution and the credit for arrears, the wife gets more than she would have had if the husband had paid the child support currently; she gets the arrears once as a share of equitable distribution and again as a charge against the husband's equitable distribution. Thus, a decree of equitable distribution of the marital property should really wash out claims for arrears of support.

CARRO, J. P., LYNCH and MILONAS, JJ., concur with FEIN, J.; SILVERMAN, J., dissents in part in an opinion.

Judgment, Supreme Court, Bronx County, entered on April 27, 1983, modified, on the law and the facts, to the extent of striking the fifth, sixth, eighth, eleventh and thirteenth decretal paragraphs and modifying the tenth decretal paragraph, and adding provisions awarding the

husband exclusive title to all of the property in Italy, awarding the wife exclusive title to The Bronx home in her name, awarding the wife and the husband each one-half interest in the value of the six parcels in the United States and Canada, and charging the husband with $9,570 in child support arrears, and the judgment is otherwise affirmed, without costs and without disbursements, and the parties directed to settle an order in conformity herewith.