477 So.2d 638 (1985)
Thomas R. VANDEGRIFT, Appellant/Cross-Appellee,
v.
Mary P. VANDEGRIFT, Appellee/Cross-Appellant.
No. 84-1253.
District Court of Appeal of Florida, Fifth District.
September 26, 1985.
Rehearing Denied October 29, 1985.
Christopher J. Smith of Williams & Smith, Tavares, for appellant/cross-appellee.
H.L. Pringle, Leesburg, for appellee/cross-appellant.
COBB, Chief Judge.
The appellant, Thomas R. Vandegrift, timely appeals a final judgment dissolving his marriage with Mary P. Vandegrift, which granted certain special equities in the marital home to the wife. The facts are essentially undisputed. The parties were married to each other on October 10, 1979, at which time Thomas had two minor children from a prior marriage, and Mary had three children from a prior marriage. Both parties owned their own homes before the marriage, with Thomas owning his home free and clear, and Mary having a small mortgage with monthly payments of $78.00 on her home. At the time of the marriage, the parties agreed to move into Thomas' house and renovate it to meet the needs of the larger family, and to rent out Mary's home. A mortgage of $30,000.00, with monthly payments of $341.00, was taken out in Thomas' name to enlarge his home, and Mary's home was rented out for $250.00 per month.
During most of the marriage Mary was employed as a bank teller and Thomas worked at Executone. The salary of each was approximately $190.00 per week. During the marriage a joint account was established, and into it the parties placed their respective salaries and the rental income. *639 The two mortgages were paid from this account. The wife used some of her income and child support from the previous marriage with which to purchase $3,500.00 in certificates of deposit for her three children.
In the final judgment, the court found that the rental checks were deposited into the joint account for a period of 34 months, and allowed the wife a special equity in the husband's home of $172.00 for each month ($250 less the $78 monthly payment on the wife's home), or a total of $5,848.00. The trial court specifically found that "the parties' joint account was used to pay for all the parties' general living expenses, including both mortgage payments, maintenance on both homes, and general expenses incident to a Husband, Wife and five children."
On appeal, the husband argues that the relatively small deposit of the rental income into the joint account lost its separate indentity, citing Hottman v. Hottman, 418 So.2d 304 (Fla. 4th DCA 1982). In that case, it was held that a wife's child support money from a prior marriage which she contributed to a joint account used for household expenses, including the mortgage payment on the husband's home, became "simply nonrecoverable contributions to the marriage." Hottman relied upon the prior case of Mitchell v. Mitchell, 368 So.2d 628 (Fla. 4th DCA 1979). See also Farkas v. Farkas, 452 So.2d 963 (Fla. 3d DCA 1984).
The husband also contends that, under Ball v. Ball, 335 So.2d 5 (Fla. 1976), the rental income here did not emanate from a source clearly unconnected to the marital relationship  on the contrary, it arose solely as a result of the marital relationship. But for the marriage and utilization of the husband's separate asset, his home, which caused him to incur a $30,000.00 mortgage liability, there would have been no rental income from the wife's home.
The argument of the husband is persuasive in both respects. Once the rental income was placed in the joint account from which various and sundry marital debts were paid, it lost its separate identity. As we read the Florida Supreme Court case of Landay v. Landay, 429 So.2d 1197 (Fla. 1983), a special equity in regard to separate funds may be established by tracing those funds which were then invested in marital assets. In the instant case, the rental income could not be traced to the husband's mortgage, any more than it could be traced to groceries, medicines, car expenses and other expenditures of the marital parties.
We also agree that it is illogical and unfair to conclude that the rental income produced from the wife's home came from a source "unconnected with the marriage" when it was made possible by the utilization of the husband's home. The manner in which the two homes were utilized during the marriage was agreed upon by the parties for the benefit of the entire family. In point of fact, the husband's equity in his separate property ultimately was reduced in value by the arrangement, since the increase in the value of his home by the addition was less than the balance of his new mortgage at the time of dissolution. On the other hand, the wife's home had received the benefit of a reduction in her mortgage, which was extant at the time of the marriage.
Accordingly, we reverse the trial court's findings of a special equity, and affirm in all other respects.
AFFIRMED in part; REVERSED in part; and REMANDED for entry of judgment consistent with this opinion.
UPCHURCH, J., concurs.
SHARP, J., dissents with opinion.
SHARP, Judge, dissenting.
I respectfully dissent because I think the trial judge's $5,848.00 award to the wife in this case may be affirmed either on the basis of a special equity or lump sum alimony.
The evidence in this case was in some dispute regarding the parties' agreement to specifically apply the net rent received from the wife's separately-owned home to pay part of the mortgage payments on the husband's home. But, reading the record *640 most favorably to sustain the trial judge[1], when the parties originally decided to marry and combine their respective families (her three daughters and his two sons) under one roof, they intended to buy a new home, and apply the rentals from his as well as her prior-owned homes, to pay for it. Because the husband thought he might be transferred, they decided to enlarge his home, and to apply the rentals on her home to pay the mortgage he incurred for the remodeling. The wife testified she was willing to assign the rental home for this purpose because she thought it was her house as well as his.
Evidencing this agreement to earmark the rental income from the wife's residence was the fact that most of the rent checks were made payable to the husband, although he had no ownership in the wife's property. He deposited the check into their joint account, and from that account they paid the mortgage on both the residences. The special equity found by the trial court related only to the net rental figure earned by the wife's residence after payment of her mortgage on her house. In addition, both parties deposited their salaries in the joint account, and met their combined families' living expenses through checks written on the joint account.

INCOME FROM SEPARATELY-OWNED ASSETS NOT "MARITAL" PROPERTY
In my view, I think a trial court may find that a special equity may be based upon the income, here rent money, earned by an asset which was owned by a party prior to marriage. The only case in Florida which I have found which deals with this question is Farkas v. Farkas, 452 So.2d 963 (Fla. 3d DCA 1984), which reaches the opposite view, based on the theory that income earned by a separately-owned asset (acquired before marriage or by gift or devise),[2] is properly characterized as "marital" earnings or assets.
This is essentially a legislative decision, since it involves a discretionary resolution of various possible policies or solutions.[3] There is a split of legislative authority on these issues, with arguably "just results" for all positions. For example, in California and New Mexico, both community property states, the income and appreciation in value of separate assets remains separate property.[4] However, in Texas, another community property state, income and appreciation from separate property is treated as "marital" property.[5]
"Equitable distribution" states also take differing views based on their respective statutes. In New York, the appreciation value of separate property remains separate, unless the increase is attributable to the contributions of a spouse.[6] In Alabama, equitable distribution of income from separate property in a dissolution is prohibited, unless the property or income was used to benefit the spouses during *641 marriage.[7] Illinois, an equitable distribution state, has recently changed its laws to exclude income and appreciation in value of separate property from the statutory definition of marital property.[8] Income may be included if its production is attributable to the personal efforts of a spouse, but appreciation is excluded although a spouse may have a right to reimbursement. See Painter v. Painter, 65 N.J. 196, 320 A.2d 484 (1974); Wade v. Wade, 72 N.C. App. 372, 325 S.E.2d 260, rev. denied, 313 N.C. 612, 330 S.E.2d 616 (1985).
The concept of equitable distribution as set forth in Canakaris v. Canakaris, 382 So.2d 1197 (Fla. 1980) is to fairly apportion assets the spouses acquired (either jointly or singly) during their marriage as a result of their personal work efforts and contributions. Whether one spouse works in the job market or in the home, the product is to be equitably shared. Brown v. Brown, 300 So.2d 719 (Fla. 1st DCA 1974), cert. dismissed, 307 So.2d 186 (Fla. 1975). If the non-house-bound spouse does not work or earns little, then there are no marital assets to distribute. Similarly, if neither spouse contributes actively to the appreciation or income of an asset, I do not think the earnings or the increase should be deemed to be a marital asset. Painter; Wade. Of course, alimony could and should continue to be predicated on the ownership and income earned by separate assets on the basis of "need" and "ability to pay," but I do not think the principles of equitable distribution of marital property should be applied to the income earned by such assets.
The cases which have denied a spouse a special equity in similar factual contexts have all dealt with the a party's salary or earnings from work during a marital relationship. See Ingram v. Ingram, 379 So.2d 955 (Fla. 1980); Duncan v. Duncan, 379 So.2d 949 (Fla. 1980); Mitchell v. Mitchell, 368 So.2d 628 (Fla. 4th DCA 1979); Hottman v. Hottman, 418 So.2d 304 (Fla. 4th DCA 1982); Hessinger v. Hessinger, 378 So.2d 322 (Fla. 2d DCA 1980); Fiedler v. Fiedler, 375 So.2d 1119 (Fla. 2d DCA 1979) cert. denied, 383 So.2d 1193 (Fla. 1980). In this case, unlike Walser v. Walser, 473 So.2d 306 (Fla. 2d DCA 1985), there was a specific agreement and understanding of the parties to earmark and use the rental fund, to pay the husband's mortgage. The trial court so found, and there is evidence to sustain its finding. Antonini v. Antonini, 473 So.2d 739 (Fla. 1st DCA 1985).

SPECIAL EQUITY
The majority opinion appears to rely most heavily on the theory that the wife's rental income was not "unconnected" with the marriage, and it should therefore be treated as ordinary income earned by her. This is only relevant, of course, if the oft-quoted dictum in Ball v. Ball, 335 So.2d 5, 7 (Fla. 1976), "Ordinarily where tenants' by the entireties money is acquired with funds generated by one working spouse while the other performs normal household and child rearing responsibilities ...", is applied to this case that a special equity will not arise. Some courts have limited Ball to real property held as tenants by the entireties. See Roffe v. Roffe, 404 So.2d 1095 (Fla. 3d DCA 1981). Others have applied this dictum to the earnings of both working spouses and a spouse's contributions to assets owned by the other. See Hessinger v. Hessinger, 378 So.2d 322 (Fla. 2d DCA 1980).
But, Ball specifically stated that it was not attempting to set forth the range of circumstances which might create a special equity. 335 So.2d at 7. Further, Canakaris recognized and approved a long line of cases in Florida which permitted the award of a special equity to one spouse for "contributions of services or funds over and above normal marital duties." [p. *642 1200]. It appears to me that the trial court's award in this case can be sustained on this basis as well, whether the funds are deemed to be the wife's "marital" income or not. See Scheidl v. Scheidl, 343 So.2d 963 (Fla. 1st DCA 1977); Roffe v. Roffe; Green v. Green, 228 So.2d 112 (Fla. 3d DCA 1969) cert. denied, 237 So.2d 538 (Fla. 1970).

LUMP SUM ALIMONY: EQUITABLE DISTRIBUTION
Assuming arguendo that the facts in this case do not justify the finding of a special equity, still this case can be affirmed, in my view, on the basis of the equitable distribution or lump sum alimony.[9] In this case, the wife did not originally request alimony, but her attorney attempted to amend the pleadings to request it and the pretrial pleadings indicated that it was an issue at trial.[10]
Short of that, I think the case should be remanded to allow such an award if necessary to do equity between the parties.[11] It is clear the wife in this case paid at least $5,000.00 on the husband's mortgage used to improve his house.[12] The aftermath of the dissolution left them both in debt, but the husband's home has received a substantial increase in value, whereas the wife testified she has had to spend all her and her children's savings, or borrow against them, to move back to her original home and repair it after the wear and tear of renters. Although the former husband now earns slightly more than the former wife, it is clear he earned during the marriage four to five times more than she did.
NOTES
[1] Lurio v. Lurio By and Through Rosenthal, 443 So.2d 197 (Fla. 3d DCA 1983); Tyson v. Edwards, 433 So.2d 549 (Fla. 5th DCA), rev. denied, 441 So.2d 633 (Fla. 1983).
[2] Gardner v. Gardner, 452 So.2d 981 (Fla. 5th DCA 1984).
[3] See Report of the Supreme Court Matrimonial Law Commission, Recommendation IV  Disposition of Marital Property, (released Jan. 31, 1983); see also Note, Property Distribution Upon Dissolution of Marriage, 8 Nova L.J. 71 (1983).
[4] Cal.Civ.Code §§ 1507-1508 (West 1983).
[5] Tex.Fam.Code Ann. §§ 5.22, 5.01 (Vernon 1975).
[6] N.Y. Dom.Rel.Law § 236 (McKinney Supp. 1984). The question in this state is what contributions to the enhancement in value of the separate property will give rise to a claim of equitable distribution, see, Sementilli v. Sementilli, 102 A.D.2d 78, 477 N.Y.S.2d 626 (1984); Alwell v. Alwell, 98 A.D.2d 549, 471 N.Y.S.2d 899 (1984) (mortgage reduction and home improvement); Jolis v. Jolis, 98 A.D.2d 692, 470 N.Y.S.2d 584 (1983) (contribution of homemakers); Wood v. Wood, 119 Misc.2d 1076, 465 N.Y.S.2d 475 (1983). The major point to be gleaned from these cases is that enhancement in value of separate property must directly or indirectly be related to the efforts of the other spouse in order to make it available for equitable distribution. See, e.g., Mol v. Mol, 147 N.J. Super. 5, 370 A.2d 509 (1977).
[7] Ala. Code § 30-2-51 (1975).
[8] Compare Ill. Ann. Stat. Ch. 40 § 503 (Smith-Hurd Supp. 1982) with § 503 (7)-(8) (Smith-Hurd rev. 1984).
[9] Roffe v. Roffe, 404 So.2d 1095 (Fla.3rd DCA 1981); Ingram v. Ingram, 379 So.2d 955 (Fla. 1980); Duncan v. Duncan, 379 So.2d 949 (Fla. 1980); see Abbe v. Abbe, 475 So. 206 (Fla. 1985).
[10] Compare Smith v. Smith, 428 So.2d 276 (Fla. 1st DCA 1982).
[11] In an analogous situation where one spouse pays another's mortgage payments, credit for such payments is generally allowed. Dancu v. Alexander, 421 So.2d 819 (Fla.4th DCA 1982); Heinemann v. Heinemann, 314 So.2d 220 (Fla. 1st DCA 1975) cert. denied, 336 So.2d 106 (Fla. 1976); Parker v. Parker, 405 So.2d 1021 (Fla.3d DCA 1981), dismissed, 412 So.2d 468 (Fla. 1982); Kennedy v. Kennedy, 448 So.2d 1227 (Fla.2d DCA 1984); Rutkin v. Rutkin, 345 So.2d 400 (Fla.3d DCA 1977).
[12] Hottman v. Hottman, 418 So.2d 304 (Fla.4th DCA 1982).